1   Kristin A. Schuler-Hintz, Esq., SBN 7171
2   Michael Chen, Esq., SBN 7307
    9510 West Sahara Avenue, Suite 200
3   Las Vegas, NV 89117
    Phone (702) 685-0329
4   Fax (866) 339-5691
    Mchen@McCarthyHolthus.com
5

6   Attorney for Appellees, Federal National Mortgage Association ("Fannie Mae") and Seterus, Inc.

7

8                          UNITED STATES COURT OF APPEALS

9                              FOR THE NINTH CIRCUIT

10

11  Aydin T. Oner,                              ) Case No. 15-15506
                 Plaintiff/Appellant,           )
12                                              )
    v.                                          )
13                                              ) **FEDERAL NATIONAL MORTGAGE**
    Federal National Mortage Association; Seterus,) **ASSOCIATION'S and SETERUS, INC.'S**
14  Inc., Ocwen Loan Servicing, Inc.;           ) **(APPELLEES') MOTION TO DISMISS**
    CitiMortgage, Inc.; and National Default    ) **APPEAL**
15  Servicing Corporation,                      )
                                                )
16                                              )
                 Defendant/Appellees.           )
17                                              )
                                                )
18                                              )
                                                )
19                                              )
                                                )
20                                              )
                                                )
21                                              )
                                                )
22  _____    )

23
        **Federal National Mortgage Association, and Seterus, Inc.,** ("Appellees" herein),
24
    moves this Court for an Order Dismissing the instant Case pursuant to Federal Rules of
25
    Appellate Procedure 27.
26
                                      **FACTS**
27
        The facts in this matter are convoluted. This case has a substantial prior history of
28
    litigation as between Appellant and Appellees in the Nevada state courts (as detailed in
29

                                        1

1    Appellants' Motion to Dismiss in the Bankruptcy Adversary Case 14-01112-mkn – discussed

2    infra), and has travelled far and wide before coming into this Court. The instant matter is an

3    appeal from an Order of Dismissal of Appeal from the United States District Court, District of

4    Nevada, the Hon. James C. Mahan presiding. The matter before Judge Mahan was, in turn, an

5    appeal (the US District Court sitting in an appellate level capacity) by Appellant from a court

6    order from the United States Bankruptcy Court, District of Nevada, the Hon Mike K. Nakagawa

7    presiding, which dismissed Appellant's (Plaintiff therein) bankruptcy adversary case (adv. case

8    no. 14-01112-mkn) and within the matter of In re: Aydin T. Oner, Chapter 13 Bankruptcy case

9    no. 14-14200-mkn. This is the second of two failed bankruptcy cases the Appellant has filed.

10    In all cases mentioned above, as well as in the instant case, the Debtor/Plaintiff/Appellant failed

11    to take action in proper prosecution of the matters and was thus dismissed in each and every

12    case. Similarly, this appeal must also be dismissed.

13         In or around January 21, 2011, the Appellant filed a Chapter 13 Bankruptcy case, case

14    no. 11-10825-mkn. The Appellant failed to properly prosecute the case and file required

15    documents pursuant to 11 U.S.C. sec 521(a) and thus was dismissed by the Chapter 13 Trustee

16    on March 23, 2011. Please see attached Exhibit A.

17         In or around August 2012, Appellees, who are mortgage creditors, instituted foreclosure

18    proceedings on Appellant's real propert(ies), and obtained judgment to do so in May 2014.

19    Please see attached Exhibit B and C.

20         In or around June 2014, and prior to the scheduled foreclosure sale date, the Appellant

21    filed for Chapter 13 bankruptcy relief in the District of Nevada. In or around August 2014, a

22    creditor and the presiding Chapter 13 Trustee filed motions to dismiss bankruptcy case for the

23    Appellant's (then the Debtor's) failure to file necessary documents (most glaringly a Chapter 13

24    Plan of Reorganization) in prosecution of the case pursuant to 11 U.S.C. Sec. 521(i). The case

25    was indeed dismissed on August 27, 2014. Please see Exhibit D.

26         Prior to said dismissal, the Appellant filed his adversary complaint within the

27    bankruptcy case, Adv. No. 14-01112-mkn, thus availing himself to said jurisdiction (and in fact

28    alleges such jurisdiction in his Complaint). A copy of the case docket and Complaint are

29    attached Exhibit E and F. All defendants therein (Appellees herein) filed respective motions to

1 | dismiss that case, and the Bankruptcy Court granted the dismissal(s) based upon insufficiency
2 | of the Appellant's (the then Plaintiff's) Complaint therein in September/November 2014.
3 | Please see Exhibit G.

4 |     Shortly thereafter, Appellant filed his appeal of the dismissal orders to the United States
5 | District Court, as case no. 14-cv-01604, before the Hon. James C. Mahan. The Appellant's
6 | appeal brief was initially due to be filed on January 24, 2015, as ordered by Judge Mahan on
7 | January 7, 2015. On or about January 20, 2015, the Appellant filed a Motion to Extend Time to
8 | file the opening brief. The Motion was granted by Judge Mahan on January 28, 2015, and the
9 | date to file the opening brief was extended to February 9, 2015. However, the Appellant failed
10 | to file his opening brief by February 9, 2015, and instead filed a self-styled "Motion to Hold
11 | Appeal in Abeyance" on February 10, 2015. After consideration, Judge Mahan ordered a final
12 | extension of time (up to March 6, 2015) to file an opening brief on March 3, 2015. Despite the
13 | several extensions of time, the Appellant failed to file any opening brief in this case, and Judge
14 | Mahan dismissed the appeal on March 13, 2015. Please see case docket as Exhibit "H."

15 |     On or about March 30, 2015, the Appellant filed this instant appeal of Judge Mahan's
16 | dismissal order of the US District Court Case, appealing the dismissal of the Bankruptcy
17 | Adversary Case no. 14-01112. This constitutes the 5th case (not including the state court
18 | litigation) in which the Appellant has compelled defendants/Appellees into fruitless litigation.
19 | Ostensibly, and setting aside the disparaging remarks Appellant makes about the prior
20 | Court/Judges and Defendants/Appellees, the Appellant seeks to appeal orders of dismissal and
21 | raises issues that were simply NOT the bases for such dismissal orders. So, while the
22 | Appellant does indeed file his opening brief, he apparently misses the point herein. As such,
23 | this latest filing constitutes yet another effort at misdirection and mischief that (taken together
24 | with Appellant's/Plaintiff's/Debtor's conduct throughout) unduly drags this Court (as with all of
25 | the previous Courts) and Defendant/Appellees into a morass of meritless litigation.

26 | ### ARGUMENT

27 |     Appellees are simply at a loss in discerning any plausible factual and/or legal basis upon
28 | which the Appellant seeks relief from this Court. The Appellant's "brief" meanders between
29 | personal rantings against the Court/parties and their purported malfeasance, and then goes on to

3

1 apparently contest any and all negative rulings by all of the aforementioned Courts rather than
2 any specific order/judgment from the Court immediately below. Curiously, the Appellant
3 attempts to re-visit the ruling of Judge Nakagawa in the Bankruptcy Adversary matter, despite
4 the reality that "that ship has sailed." That issue/order was the subject of the prior appellate
5 case in which the Appellant himself failed to ever file his opening brief, despite the several
6 extensions granted by Judge Mahan. The Appellant had ample opportunity to duly present his
7 case and simply neglected to do so. Now the Appellant, impermissibly appeals that order to this
8 Court without any reasoning in support or even a cursory analysis/criticism of the actual reasons
9 that Judge Nakagawa states in the ruling. Again, Appellant "misses the point" of the current
10 appeal, on both procedural and substantive grounds, as to the actual nature of the Bankruptcy
11 Court's ruling.

12       Devolving further, the Appellant's "brief" attacks Judge Mahan's order on dismissal (the
13 proper order under scrutiny), but offers even less factual or legal grounds for appeal. Again,
14 Appellant offers absolutely no legal standards or authority for this Court to apply to the
15 circumstances resulting in the order/judgment below. And if that were not enough, and in lieu
16 of actual facts in support, the Appellant simply impugns the Court/Judge Mahan with
17 inexcusable personal character attacks as if that were a proper basis for the appeal. There are
18 simply no grounds for appeal herein, and this case should be dismissed.

19
20 /.../
21
22 /.../
23
24 /.../
25
26 /.../
27
28
29

4

1      The above, of course, is telling of the conduct/intent of the Appellant throughout the
2  many cases, and this latest episode builds an even clearer case as to the Appellant's obvious
3  campaign of vexatious litigation. The Appellant's efforts across the Nevada District Court, as
4  well as various Federal Courts/cases, where the denials of his demanded "remedies" were either
5  based in substance or were completely a result of his own lack of diligence, truly mandates
6  dismissal herein. The Courts/Appellees continue to prejudicially incur expense and delay due to
7  the meritless and failed actions of the Appellant over the last four years.

8      WHEREFORE, Appellees pray for judgment as follows:

9    1. For an Order dismissing the instant case in its entirety as to all appellees.

10    2. For attorneys' fees and costs incurred herein.

11    3. For such other relief as the Court deems proper.

12

13  Dated: August 26, 2015           McCarthy & Holthus, LLP

14

15

16                          By: /s/ Michael Chen

Michael Chen, Esq.

17                          Attorney for Appellees Federal National Mortgage

Association and Seterus, Inc.

18

19

20

21

22

23

24

25

26

27

28

29

CERTIFICATE OF SERVICE

On August 26, 2015, I served the foregoing documents described as **FEDERAL NATIONAL MORTGAGE ASSOCIATION'S and SETERUS, INC.'S (APPELLEES') MOTION TO DISMISS APPEAL** on the following individuals by electronic means through the Court's ECF program:

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

/s/ Joni Rispalje

Joni Rispalje

On August 26, 2015, I served the foregoing documents described as **FEDERAL NATIONAL MORTGAGE ASSOCIATION'S and SETERUS, INC.'S (APPELLEES') MOTION TO DISMISS APPEAL**, on the following individuals by depositing true copies thereof in the United States mail at San Diego, CA, enclosed in a sealed envelope, with postage paid, addressed as follows:

Appellant Aydin T. Oner
3733 Misty Falls Street
Las Vegas, NV 89129

Raymond Jereza, Esq.
Wright Finlay & Zak, LLP
7785 W. Sahara Ave. Suite 200
Las Vegas, NV 89117
Attorney for Ocwen Loan Servicing

Matthew K. Schriever, Esq.
Tiffany & Bosco, P.A.
212 South Jones Boulevard
Las Vegas, NV 89107
Attorney for Citimortgage, Inc. and NDSC

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

/s/ Joni Rispalje
Joni Rispalje

6

# EXHIBIT "A"

**DebtEd, BAPCPA, FeeDueINST, DISMISSED, CLOSED**

## U.S. Bankruptcy Court
## District of Nevada (Las Vegas)
## Bankruptcy Petition #: 11-10825-mkn

|  |  |
|---|---|
| *Assigned to:* MIKE K. NAKAGAWA | *Date filed:* 01/21/2011 |
| Chapter 13 | *Date terminated:* 05/12/2011 |
| Voluntary | *Debtor dismissed:* 03/23/2011 |
| Asset | *341 meeting:* 03/08/2011 |

*Debtor disposition:* Dismissed for Failure to File Information

**Debtor**
**AYDIN TONY ONER**                          represented by **AYDIN TONY ONER**
3445 BEARPIN GAP LANE                                              PRO SE
LAS VEGAS, NV 89129
CLARK-NV
SSN / ITIN: xxx-xx-2078

**Trustee**
**RICK A. YARNALL**
701 BRIDGER AVE., #820
LAS VEGAS, NV 89101
(702) 853-4500

| Filing Date | # | Docket Text |
|---|---|---|
| 01/21/2011 | 1<br>(11 pgs) | Chapter 13 Voluntary Petition. Fee Amount $45.00. Request for fee to be paid in installments. Filed by AYDIN TONY ONER (lme) (Entered: 01/21/2011) |
| 01/21/2011 | 2<br>(4 pgs) | Meeting of Creditors and Notice of Appointment of Trustee RICK A. YARNALL. 341 meeting to be held on 03/08/2011 at 01:30 PM at 341s - Foley Bldg,Rm 1500. Confirmation hearing to be held on 04/14/2011 at 01:30 PM at Foley Bldg,Third Floor. Objection to Dischargeability of Certain Debts due by 05/09/2011. Chapter 13 Proof of Claims due by 06/06/2011. (Entered: 01/21/2011) |
| 01/21/2011 | 3 | Statement of Social Security Number(s). **This document contains sensitive information and cannot be viewed by the public.** Filed by AYDIN TONY ONER (lme) (Entered: 01/21/2011) |

| 01/21/2011 | 4 (1 pg) | Application to Pay Filing Fee in Installments (lme) (Entered: 01/21/2011) |
|---|---|---|
| 01/21/2011 | 5 (1 pg) | Order to Pay Filing Fees in Installments (BNC) First Installment Payment due by 1/21/2011. Second Installment Payment due by 3/22/2011. Third Installment Payment due by 4/21/2011. Final Installment Payment due by 5/21/2011. (Related document(s)4 Application to Pay Filing Fees in Installments) (lme) (Entered: 01/21/2011) |
| 01/21/2011 | 6 | Set Deficient Filing Deadlines. Incomplete Filings due by 2/4/2011. Summary of schedules due by 2/4/2011. Schedules A-J due by 2/4/2011. Declaration Re: Schedules due by 2/4/2011. Statement of Financial Affairs due by 2/4/2011. Chapter 13 Plan due by 2/4/2011. Chapter 13 Means Test Form 22C Due 2/4/2011 (lme) (Entered: 01/21/2011) |
| 01/21/2011 | 7 (7 pgs) | Notice of Incomplete and/or Deficient Filing. (lme) (Entered: 01/21/2011) |
| 01/21/2011 | 12 | Receipt Number-1st Installment 199726, Fee Amount $45. (Related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor AYDIN TONY ONER, 5 Order to Pay Filing Fees in Installments (BNC)) (cms) (Entered: 02/03/2011) |
| 01/23/2011 | 8 (7 pgs) | BNC Certificate of Mailing (Related document(s)2 Meeting of Creditors Chapter 13 (BNC)) No. of Notices: 6. Service Date 01/23/2011. (Admin.) (Entered: 01/23/2011) |
| 01/23/2011 | 9 (8 pgs) | BNC Certificate of Mailing. (Related document(s)7 Incomplete and/or Deficient Filing-Ch 13 (BNC)) No. of Notices: 1. Service Date 01/23/2011. (Admin.) (Entered: 01/23/2011) |
| 01/23/2011 | 10 (2 pgs) | BNC Certificate of Mailing - pdf (Related document(s)5 Order to Pay Filing Fees in Installments (BNC)) No. of Notices: 1. Service Date 01/23/2011. (Admin.) (Entered: 01/23/2011) |
| 01/28/2011 | 11 (1 pg) | Request for Special Notice Filed by Litton Loan Servicing, L.P. (MCCALLA RAYMER, LLC (lg)) (Entered: 01/28/2011) |
| 03/09/2011 | 13 | 341 Meeting Off Calendar (YARNALL(gg), RICK) (Entered: 03/09/2011) |
| 03/10/2011 | | |

| | | 14<br>(1 pg) | Trustee's Opposition to Confirmation of Plan Combined with Trustee's Recommendation for Dismissal. (YARNALL, RICK) (Entered: 03/10/2011) |
|---|---|---|---|
| 03/10/2011 | | 15<br>(1 pg) | Trustee's Opposition to Confirmation of Plan Combined with Trustee's Recommendation for Dismissal. (YARNALL, RICK) (Entered: 03/10/2011) |
| 03/13/2011 | | 16<br>(2 pgs) | BNC Certificate of Mailing - pdf (Related document(s)14 Trustee's Opposition to Confirmation/Recommendation for Dismissal (BNC)) No. of Notices: 11. Service Date 03/13/2011. (Admin.) (Entered: 03/13/2011) |
| 03/13/2011 | | 17<br>(2 pgs) | BNC Certificate of Mailing - pdf (Related document(s)15 Trustee's Opposition to Confirmation/Recommendation for Dismissal (BNC)) No. of Notices: 11. Service Date 03/13/2011. (Admin.) (Entered: 03/13/2011) |
| 03/18/2011 | | 18<br>(2 pgs) | Ex Parte Motion to Dismiss Case For Failure to File Documents under 521 *(i)* (YARNALL(la), RICK) (Entered: 03/18/2011) |
| 03/23/2011 | | 19<br>(2 pgs) | Order Dismissing Chapter 13 Case Pursuant to Section 521 (i) (Related Doc # 18) (ccc) (Entered: 03/23/2011) |
| 03/23/2011 | | 20<br>(1 pg) | Notice of Dismissal; Notice That All Pending Hearings Are Vacated (ccc) (Entered: 03/23/2011) |
| 03/23/2011 | | 21<br>(3 pgs) | BNC Certificate of Mailing - pdf (Related document(s)18 Motion to Dismiss (BNC)) No. of Notices: 11. Service Date 03/23/2011. (Admin.) (Entered: 03/23/2011) |
| 03/24/2011 | | 22<br>(3 pgs) | Notice of Entry of Order (Related document(s)19 Order on Motion to Dismiss Case.)(YARNALL(lp), RICK) (Entered: 03/24/2011) |
| 03/25/2011 | | 23<br>(2 pgs) | BNC Certificate of Mailing. (Related document(s)20 Notice of Dismissal; Notice That All Pending Hearings Are Vacated (BNC-BK)) No. of Notices: 9. Service Date 03/25/2011. (Admin.) (Entered: 03/25/2011) |
| 03/25/2011 | | 24<br>(3 pgs) | BNC Certificate of Mailing - pdf (Related document(s)19 Order on Motion to Dismiss Case) No. of Notices: 9. Service Date 03/25/2011. (Admin.) (Entered: 03/25/2011) |
| 03/27/2011 | | 25<br>(4 pgs) | |

| | | BNC Certificate of Mailing - pdf (Related document(s)22 Notice of Entry of Order (BNC)) No. of Notices: 11. Service Date 03/27/2011. (Admin.) (Entered: 03/27/2011) |
|---|---|---|
| 05/11/2011 | 26 (3 pgs) | Chapter 13 Standing Trustee's Final Report and Account. Chapter 13 (Dismissed) Closing due 05/12/2011. (YARNALL, RICK) (Entered: 05/11/2011) |
| 05/12/2011 | 27 (1 pg) | Order Discharging Chapter 13 Trustee and Closing of Dismissed Case (ccc) (Entered: 05/12/2011) |
| 05/19/2011 | 28 (4 pgs) | BNC Certificate of Mailing - pdf (Related document(s)26 Chapter 13 Standing Trustee's Final Report and Account -Dismissed (BNC)) No. of Notices: 1. Service Date 05/19/2011. (Admin.) (Entered: 05/19/2011) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/26/2015 08:16:47 | | | |
| **PACER Login:** | chenmw11:4640065:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 11-10825-mkn Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# EXHIBIT "B"

**CIVIL COVER SHEET**     A - 1 2 - 6 6 7 6 7 4 - C

Clark County, Nevada

Case No. _____     X X X

*(Assigned by Clerk's Office)*

## I. Party Information

| | |
|---|---|
| Plaintiff(s) (name/address/phone): FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA) | Defendant(s) (name/address/phone): Aydin T. Oner/ 1: 1212 Pacific Terrace Drive, Las Vegas, NV 89128, 2: 3733 Misty Falls St, Las Vegas, NV 89129-7646 |
| Attorney (name/address/phone): Kristin A. Schuler-Hintz, Esq., SBN 7171 McCarthy & Holthus, LLP 9510 W. Sahara Ave., Suite 110 Las Vegas, NV 89117 Phone (702) 685-0329 Email: NVJud@McCarthyHolthus.com | Countrywide Document Custody Services, a Division of Treasury Bank, N.A./ 1800 Tapo Canyon Road, Simi Valley, CA 93063 |

## II. Nature of Controversy (Please check applicable bold category and applicable subcategory, if appropriate)

☐ **Arbitration Requested**

### Civil Cases

| Real Property | Torts | |
|---|---|---|
| ☐ **Landlord/Tenant**<br>  ☐ Unlawful Detainer<br>☒ **Title to Property**<br>  ☒ Foreclosure<br>  ☐ Liens<br>  ☐ Quiet Title<br>  ☐ Specific Performance<br>☐ **Condemnation/Eminent Domain**<br>☐ **Other Real Property**<br>  ☐ Partition<br>  ☐ Planning/Zoning | **Negligence**<br>☐ **Negligence – Auto**<br>☐ **Negligence – Medical/Dental**<br>☐ **Negligence – Premises Liability**<br>(Slip/Fall)<br>☐ **Negligence – Other** | ☐ **Product Liability**<br>  ☐ Product Liability/Motor Vehicle<br>  ☐ Other Torts/Product Liability<br>☐ **Intentional Misconduct**<br>  ☐ Torts/Defamation (Libel/Slander)<br>  ☐ Interfere with Contract Rights<br>☐ **Employment Torts** (Wrongful termination)<br>☐ **Other Torts**<br>  ☐ Anti-trust<br>  ☐ Fraud/Misrepresentation<br>  ☐ Insurance<br>  ☐ Legal Tort<br>  ☐ Unfair Competition |

| Probate | Other Civil Filing Types | |
|---|---|---|
| **Estimated Estate Value:** _____<br>☐ **Summary Administration**<br>☐ **General Administration**<br>☐ **Special Administration**<br>☐ **Set Aside Estates**<br>☐ **Trust/Conservatorships**<br>  ☐ Individual Trustee<br>  ☐ Corporate Trustee<br>☐ **Other Probate** | ☐ **Construction Defect**<br>  ☐ Chapter 40<br>  ☐ General<br>☐ **Breach of Contract**<br>  ☐ Building &amp; Construction<br>  ☐ Insurance Carrier<br>  ☐ Commercial Instrument<br>  ☐ Other Contracts/Acct/Judgment<br>  ☐ Collection of Actions<br>  ☐ Employment Contract<br>  ☐ Guarantee<br>  ☐ Sale Contract<br>  ☐ Uniform Commercial Code<br>☐ **Civil Petition for Judicial Review**<br>  ☐ Foreclosure Mediation<br>  ☐ Other Administrative Law<br>  ☐ Department of Motor Vehicles<br>  ☐ Worker's Compensation Appeal | ☐ **Appeal from Lower Court** *(also check applicable civil case box)*<br>  ☐ Transfer from Justice Court<br>  ☐ Justice Court Civil Appeal<br>☐ **Civil Writ**<br>  ☐ Other Special Proceeding<br>☐ **Other Civil Filing**<br>  ☐ Compromise of Minor's Claim<br>  ☐ Conversion of Property<br>  ☐ Damage to Property<br>  ☐ Employment Security<br>  ☐ Enforcement of Judgment<br>  ☐ Foreign Judgment – Civil<br>  ☐ Other Personal Property<br>  ☐ Recovery of Property<br>  ☐ Stockholder Suit<br>  ☐ Other Civil Matters |

## III. Business Court Requested (Please check applicable category; *for Clark or Washoe Counties only.*)

| | | |
|---|---|---|
| ☐ NRS Chapters 78-88<br>☐ Commodities (NRS 90)<br>☐ Securities (NRS 90) | ☐ Investments (NRS 104 Art. 8)<br>☐ Deceptive Trade Practices (NRS 598)<br>☐ Trademarks (NRS 600A) | ☐ Enhanced Case Mgmt/Business<br>☐ Other Business Court Matters |

8/29/12
_____
Date

_____
Janice Jacovino, Esq.

Electronically Filed
08/30/2012 12:23:28 PM

1  Kristin A. Schuler-Hintz, Esq., SBN 7171
   McCarthy & Holthus, LLP
2  9510 W. Sahara Ave., Suite 110
   Las Vegas, NV 89117
3  Phone (702) 685-0329
   Fax (866) 339-5691
4  Email NVJud@McCarthyHolthus.com

**CLERK OF THE COURT**

5  Attorneys for Plaintiff,
   FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA)

6

7  **IN THE EIGHTH JUDICIAL DISTRICT COURT FOR THE STATE OF NEVADA**

8  **IN AND FOR THE COUNTY OF CLARK**

9

10 FEDERAL NATIONAL MORTGAGE
   ASSOCIATION, (FNMA),

11                Plaintiff,

12 v.

13 AYDIN T. ONER; COUNTRYWIDE
   DOCUMENT CUSTODY SERVICES, A
14 DIVISION OF TREASURY BANK, N.A;
   DOES I–X; and ROES 1 -10 inclusive,

15                Defendants.

16

Case No. A – 1 2 – 6 6 7 6 7 4 – C

Dept. No.  X X X

**VERIFIED COMPLAINT FOR JUDICIAL
FORECLOSURE AND DEFICIENCY
JUDGMENT OF DEED OF TRUST**

**ARBITRATION EXCEPTION CLAIMED:
TITLE TO REAL ESTATE**

MCCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
9510 WEST SAHARA AVENUE, SUITE 110
LAS VEGAS, NV 89117
TELEPHONE (702) 685-0329//Facsimile (866) 339-5691
Email NVJud@McCarthyHolthus.com

17      COMES NOW Plaintiff, FEDERAL NATIONAL MORTGAGE ASSOCIATION,

18 (FNMA), filing this civil action against Defendants for (1) Judicial Foreclosure and (2)

19 Deficiency Judgment on Deed of Trust.

20                              **INTRODUCTION**

21      1. This action is a judicial foreclosure with money demand within the jurisdictional limits

22 of this Court and this venue is appropriate because the property involved is within this Court's

23 jurisdiction. Plaintiff is authorized to bring this action in the state of Nevada by NRS 40.430.

24      2. The real property on which Plaintiff seeks foreclosure consists of a single-family

25 residence commonly known as 1212 Pacific Terrace Drive, Las Vegas, NV 89128 and more

26 specifically described in Exhibit "1" attached hereto and incorporation herein by this reference.

27      3. Plaintiff, FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA), is an

28 Entity authorized to do business within the State of Nevada. Seterus, Inc. is the servicer of the

1  loan.

2  4. Defendant, Aydin T. Oner, is an individual believed to be residing in Clark County,
3  Nevada who executed the subject Note and Deed of Trust relative to real property located in Clark
4  County, Nevada of which this Complaint arises, or claims an interest in the property, or both.

5  5. Defendant, Countrywide Document Custody Services, a division of Treasury Bank,
6  N.A., is an entity that may claim an interest in the subject property pursuant to a recorded Deed of
7  Trust.

8  6. Plaintiff does not know the true names, capacities or bases of liability of Defendants
9  sued as Does I-X and Roes 1-10 inclusive. Each fictitiously named defendant is in some way
10  liable to Plaintiff or claims some right, title or interest in the subject property that is subsequent to
11  and subject to the interest of Plaintiff, or both. Plaintiff will amend this Complaint to reflect the
12  true names of said Defendants when the same have been ascertained.

13  **FACTUAL BACKGROUND**

14  7. Plaintiffs incorporates and re-alleges the allegations of paragraphs 1 through 6 above, as
15  if fully set forth herein.

16  8. The real property which is the subject matter of this action is commonly known as 1212
17  Pacific Terrace Drive, Las Vegas, NV 89128 (hereinafter the "Property"). The Parcel ID Number
18  of the Property is 138-27-211-021. The subject real property is more particularly described in
19  Exhibit "1", attached hereto and incorporated herein by this reference.

20  9. The Property that is the subject matter of this action is in Clark County, Nevada.

21  10. On or about June 16, 2005, Aydin T. Oner signed a Note in the principal amount of
22  $256,000.00, which was secured by a Deed of Trust recorded on June 22, 2005 as document
23  number 20050622-0004631 in the records of Clark County, Nevada. A copy of the Note (made at
24  or near the time of loan origination), Deed of Trust, Assignment and Loan Modification
25  Agreement are attached hereto collectively as Exhibit "1". The Note and Deed of Trust were
26  subsequently assigned to FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA).
27  FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA) is the current holder of the
28  Note and Deed of Trust and the loan is serviced by Seterus, Inc..

1

**FIRST CAUSE OF ACTION**

2

**(Judicial Foreclosure)**

3       11. Plaintiff incorporates and re-alleges the allegations of paragraphs 1 through 10 above,

4   as if fully set forth herein.

5       12. Counsel is informed and believes and on that basis alleges that Defendant Oner,

6   ("Trustor") have defaulted under the terms of the Note and Deed of Trust by having failed and

7   refused to make monthly payments of $625.66 (P&I) commencing with the payment due on July

8   7, 2011 and in subsequent months. Counsel is informed and believes that the delinquent monthly

9   installments total $8,759.24, exclusive of associated, fees, costs and advances.

10      13. The Deed of Trust provides that, if the Trustor defaults in paying any indebtedness

11  secured by the Deed of Trust, or in the performance of any agreement in the subject agreement or

12  Deed of Trust, the entire principal and interest secured by the Deed of Trust will, upon notice to

13  the Borrower, become immediately due and payable.

14      14. Pursuant to the terms of the Note and Deed of Trust and the acceleration letter attached

15  hereto as Exhibit "2", FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA), has

16  declared all sums immediately due and payable and accelerated all sums due.

17      15. FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA) is entitled to

18  foreclose on its interest in the property.

19      16. FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA) is entitled to an

20  award of its attorney's fees and costs pursuant to the terms of the Note and Deed of Trust,

21  including post-judgment attorney's fees and costs.

22      17. FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA)'s lien is prior and

23  paramount to the interest of any Defendants hereto, and all such subordinate interests should be

24  eliminated by this foreclosure action. FEDERAL NATIONAL MORTGAGE ASSOCIATION,

25  (FNMA) is entitled to judgment foreclosing the interests of any Defendant hereto in the Property

26  and forever barring that interest, and that of any successors, assigns or heirs.

27      18. FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA) is entitled to the

28  appointment of a receiver to protect the Property from neglect and waste during the pendency of

MCCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
9510 WEST SAHARA AVENUE, SUITE 110
LAS VEGAS, NV 89117
TELEPHONE (702) 685-0329/Facsimile (866) 339-5691
Email NVJud@McCarthyHolthus.com

1  this action and to collect any rents to which any Defendants would be entitled.

2  19. FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA) is entitled to decree

3  or judgment of the court directing a sale of the encumbered property and application of the

4  proceeds of sale as provided in NRS 40.462.

5  20. FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA) is entitled to a

6  judgment permitting it to bid all or part of its judgment at sale.

### SECOND CAUSE OF ACTION

### (Deficiency Judgment on Deed of Trust)

9  21. Plaintiff incorporates and re-alleges the allegations of paragraphs 1 through 20 above,

10  as if fully set forth herein.

11  22. If a Borrower has obtained a bankruptcy discharge then no deficiency will be sought.

12  If there has been no discharge and a deficiency remains after the application of proceeds from the

13  sale, plaintiff is entitled to seek a deficiency judgment against the Borrower(s), pursuant to NRS

14  40.455.

15  WHEREFORE, Plaintiff prays for judgment as follows:

16  A.  Against Defendant, Aydin T. Oner, for the minimum sum of $203,763.86, plus all

17  pre and post-filing costs and attorney's fees, and interest from July 7, 2011  until paid in full, plus

18  pre and post-judgment interest on all advances, costs and attorney's fees from the date each was

19  due until paid in full, for its costs incurred herein, including post-judgment costs, for its attorney's

20  fees, including post-judgment attorney's fees, pursuant to the terms of the Note and Deed of

21  Trust, and for such other and further relief as the Court deems just and proper.

22  B.  Against Defendants, Aydin T. Oner and Countrywide Dcoument Custody Services,

23  a division of Treasury Bank, N.A., Does I-X inclusive, and Roes 1-10 inclusive, individually and

24  collectively, jointly and severally as follows:

25  (1)  That the sums prayed for and alleged to be secured by the Property are

26  secured and that the Deed of Trust is a valid lien on the Property described in the Complaint and

27  on the whole thereof, and on the rents, issues, and profits of the Property, and all buildings and

28  improvement thereon and fixtures attached thereto as used in connection with the Property;

MCCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
9510 WEST SAHARA AVENUE, SUITE 110
LAS VEGAS, NV 89117
TELEPHONE (702) 685-0329/Facsimile (866) 339-5691
Email: NVJud@McCarthyHolthus.com

1    (2)    That the Deed of Trust be declared superior to any right, title, interest, lien,
2    equity or estate of the Defendants;

3    (3)    That it be adjudged and decreed that said Deed of Trust be foreclosed and a
4    decree or judgment of the court directing a sale of the encumbered property and application of the
5    proceeds of sale as provided in NRS 40.462 in satisfaction of the judgment herein;

6    (4)    That the Defendants, and all persons claiming by, through or under them, or
7    any of them, be foreclosed of and forever barred from any and all right, title, claim, interest, or
8    lien in or to the Property or with respect thereto except such rights of redemption as they may
9    have by law;

10    (5)    That FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA) is
11    granted any further relief in satisfaction of the judgment as may be permitted under Nevada law;

12    (6)    That FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA) is
13    entitled at its discretion to the appointment of a receiver to protect the Property from neglect and
14    waste during the pendency of this action and to collect any rents to which any Defendants would
15    be entitled;

16    (7)    That if the proceeds of the sale do not satisfy Plaintiffs' judgment in full,
17    the Plaintiff may amend its complaint to seek a deficiency judgment against Defendant, Aydin T.
18    Oner for the deficiency;

19    (8)    For its costs incurred herein, including post-judgment costs;

20    (9)    For its attorney's fees, including post-judgment fees, pursuant to the Note
21    and Deed of Trust; and

22    (10)    For any other further relief as this court deems just and proper.

23
24    Dated: August 29, 2012                    Respectfully submitted,
                                               **MCCARTHY & HOLTHUS, LLP**
25
26                                             By: _____
27                                               Kristin A. Schuler-Hintz (NSB# 7171)
                                               Janice Jacovino (NSB# 11612)
28

MCCARTHY & HOLTHUS, LLP
ATTORNEYS AT LAW
9510 WEST SAHARA AVENUE, SUITE 110
LAS VEGAS, NV 89117
TELEPHONE (702) 685-0329/Facsimile (866) 339-5691
Email NV.Judj@McCarthyHolthus.com

## VERIFICATION

I, Janice Jacovino, Esq., am one of the attorneys for Petitioner, FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA). Such party is absent from the county aforesaid where such attorneys have their office and I make the verification for and on behalf of that party for that reason. I have read the Complaint for Judicial Foreclosure and know its contents. I am informed, believe, and on that ground allege the matters stated are true.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Date: August 29, 2012

By:

Janice Jacovino (NSB# 11612)
9510 West Sahara, Suite 110
Las Vegas, NV 89117

NV-12-524916-JUD

# EXHIBIT "1"



Loan No.: **11200**

# InterestOnly ADJUSTABLE RATE NOTE

(One-Year LIBOR Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

|  |  |  |
|---|---|---|
| | | MIN: **1003641-0000001467-6** |
| | | MERS TELEPHONE: **(888) 679-6377** |
| **June 16, 2005** | **LAS VEGAS** | **NEVADA** |
| [Date] | [City] | [State] |

**1212 PACIFIC TERRACE DRIVE, LAS VEGAS, NEVADA 89128**
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **256,000.00** (this amount is called "Principal"), plus interest, to the order of Lender. The Lender is CUSTOM HOME LOANS, INC., a NEVADA Corporation. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.875%**. The interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment on the FIRST day of every month, beginning on August 1, 2005. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on July 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 4460 WEST HACIENDA AVENUE, SUITE 103, LAS VEGAS, NEVADA 89118 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

My monthly payment will be in the amount of U.S. $ **1,253.33** before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

### 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the FIRST day of July, 2008, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index." If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One-Fourth percentage points (2.250%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one

Initials: $A TO$

percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

#### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 7.875% or less than 3.875%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.875%.

#### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

#### (F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

#### (G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

### 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

### 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00% of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.



Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.     OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.     WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.     UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: $\mathcal{A}\mathcal{TQ}$

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
**AYDIN TONER**                        -Borrower                                               -Borrower


_____ (Seal)          _____ (Seal)
                                       -Borrower                                               -Borrower

*[Sign Original Only]*

# ENDORSEMENT ALLONGE TO NOTE

Loan Number: 93028748

Description:
1212 PACIFIC TERRACE DRIVE,
LAS VEGAS, NV 89128

This Allonge to Note is to that certain Note dated JUNE 16, 2005 executed by AMDIN T ONER, A SINGLE MAN

In the amount of $256,000, in favor of

CUSTOM HOME LOANS, INC.

as payee. This Allonge is affixed and becomes a permanent part of said Note.

PAY TO THE ORDER OF

COUNTRYWIDE DOCUMENT CUSTODY SERVICES, A DIVISION OF TREASURY BANK, N.A.

WITHOUT RECOURSE.

LENDER: Custom Home Loans, Inc.

By: _____                    Date: 6/24/05

Name: PETE BRINKMAN

Its:     VICE PRESIDENT



r ʃ
Assessor's Parcel Number: 138-27-211-021
When recorded mail to:
CUSTOM HOME LOANS, INC.
4460 WEST HACIENDA AVENUE, SUITE 103
LAS VEGAS, NEVADA 89118
    505170
Mail Tax Statements to:
AYDIN TONER
1212 PACIFIC TERRACE DRIVE
LAS VEGAS, NEVADA 89128
Prepared By:

~~Recording Requested By:~~

20050622-0004631

Fee: $36.00
N/C Fee: $0.00

06/22/2005          14:21:14
T20050114050
Requestor:
    STEWART TITLE OF NEVADA

Frances Deane                LEX
Clark County Recorder      Pgs: 23

[Space Above This Line For Recording Data]

## DEED OF TRUST

MIN: 1003641-0000001467-6
MERS TELEPHONE: (888) 679-6377

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 16, 2005, together with all Riders to this document.
(B) "Borrower" is AYDIN TONER A SINGLE MAN. Borrower is the trustor under this Security Instrument.
(C) "Lender" is CUSTOM HOME LOANS, INC., a NEVADA Corporation. Lender is a corporation organized and existing under the laws of the State of NEVADA. Lender's address is 4460 WEST HACIENDA AVENUE, SUITE 103, LAS VEGAS, NEVADA 89118.
(D) "Trustee" is STEWART TITLE OF NEVADA.
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
                                                          Form 3029 1/01

Page 1 of 18                          Initials: A T Q

nvcmcmd

(F) "Note" means the promissory note signed by Borrower and dated June 16, 2005. The Note states that Borrower owes Lender Two Hundred Fifty Six Thousand And 00/100 Dollars (U.S. $ 256,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than July 1, 2035.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] 1-4 Family Rider
[ ] VA Rider    [ ] Biweekly Payment Rider    [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Form 3029 1/01

Page 2 of 18

Initials: $A T \mathcal{L}$

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of CLARK [Name of Recording Jurisdiction]:

**SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF.**

Parcel ID Number: 138-27-271-021

which currently has the address of

**1212 PACIFIC TERRACE DRIVE** [Street]
**LAS VEGAS** [City], Nevada **89128** [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Form 3029 1/01

Page 3 of 18

Initials: _A T O_

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Form 3029 1/01
Page 4 of 18
Initials:

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

NEVADA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Form 3029 1/01

Initials: _____

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to

purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3029 1/01

Page 7 of 18

Initials: _____

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation

NEVADA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Form 3029 1/01

Page 8 of 18

Initials: _____

to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Form 3029 1/01

Page 9 of 18

Initials: $\underline{A \; T \; O}$

Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Form 3029 1/01

Page 10 of 18

Initials: _____

value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
Form 3029 1/01

Page 11 of 18

Initials: $A T i 9$

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**NEVADA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

Form 3029 1/01

Page 12 of 18

Initials: $\underline{\text{A T Q}}$

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Form 3029 1/01

Page 13 of 18

Initials: _____

the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary,

Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Form 3029 1/01

Page 15 of 18

Initials: _____

Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ 2,560.00.

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 16 of 18

Form 3029 1/01

Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ _____ (Seal)
**AYDIN T ONER** -Borrower

_____ _____ (Seal)
-Borrower

_____ _____ (Seal)
-Borrower

_____ _____ (Seal)
-Borrower

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
Form 3029 1/01

Page 17 of 18

**STATE OF NEVADA**
**COUNTY OF** _____ Clark

This instrument was acknowledged before me on _____ June 17, 2005 _____ by
**AYDIN T ONER**

My Commission Expires:

PATRICIA J. GOBLE
Notary Public State of Nevada
No. 05-96453-1
My appt. exp. Apr. 27, 2009

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 18 of 18

Form 3029 1/01

Initials: _____

## EXHIBIT "A"

Parcel One (1):

Lot Forty-Three (43) in Block One (1) of Ridgeview West – Unit 3, as shown by map thereof on file in Book 48 of Plats, Page 53, in the Office of the County Recorder of Clark County, Nevada.

Parcel Two (2):

Together with a cross-easement, if any, for sideyard purposes over that portio of the Lot adjacent with and contiguous to the herein described lot, as delineated on said plat map.

Inst #: 201203230001040
Fees: $17.00
N/C Fee: $25.00
03/23/2012 09:57:55 AM
Receipt #: 1106307
Requestor:
BANK OF AMERICA HOME LOANS
Recorded By: MAT  Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

Tax Parcel: 138-27-211-021

Recording requested by:
BANK OF AMERICA N.A.,
SUCCESSOR BY MERGER TO BAC
HOME LOANS SERVICING LP FKA
COUNTRYWIDE HOME LOANS
SERVICING, LP

When recorded mail to:
BANK OF AMERICA
DOCUMENT PROCESSING
TX2-979-01-19
4500 AMON CARTER BLVD FLOOR
FORT WORTH, TX 76155
Attn: ASSIGNMENT UNIT

Mail tax statement to:
Bank of America, N.A.
1757 Tapo Canyon Road, #300
Simi Valley, CA 93063

---

### CORPORATION ASSIGNMENT OF DEED OF TRUST

Doc. ID# 19809302874818150
Commitment# 826745

For value received, the undersigned, BANK OF AMERICA N.A., SUCCESSOR BY
MERGER TO BAC HOME LOANS SERVICING LP FKA COUNTRYWIDE HOME LOANS SERVICING,
LP, 1800 TAPO CANYON RD, SIMI VALLEY, CA  93063, hereby grants, assigns and
transfers to:
FEDERAL NATIONAL MORTGAGE ASSOCIATION
14221 DALLAS PARKWAY STE 1000 DALLAS, TX 75254

All beneficial interest under that certain Deed of Trust dated  6/16/05,
executed by: AYDIN T ONER, Trustor as per TRUST DEED recorded as Instrument
No. 596746 on 8/19/05 in Book          Page          of official
records in the County Recorder's Office of CLARK County, NEVADA.
The Trustee is STEWART TITLE AND TRUST OF NEV.
Original Mortgage $256,000.00
1212 PACIFIC TERRACE DRIVE, LAS VEGAS, NV 89128

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Deed of Trust.

Dated: 02/14/2012        BANK OF AMERICA N.A., SUCCESSOR BY MERGER TO BAC HOME
                         LOANS SERVICING LP FKA COUNTRYWIDE HOME LOANS
                         SERVICING, LP

                         By
                            DEBBIE KISS, ASSISTANT VICE PRESIDENT .

State of California
County of Ventura

On 2-14-2012 before me, TERESA D. WILLIAMS , Notary Public, personally
appeared DEBBIE KISS, who proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her their
authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____
           TERESA D. WILLIAMS



TERESA D. WILLIAMS
COMM. # 1919662
NOTARY PUBLIC CALIFORNIA
SAN BERNARDINO COUNTY
My comm. expires Dec. 31, 2014

Prepared by: ANDREW BUI
1800 TAPO CANYON RD MC: CA6-914-01-43
SIMI VALLEY, CA 93063

Contact Federal National Mortgage Association
for this instrument c/o Seterus, Inc., 14523 SW Millikan
Way # 200, Beaverton, OR 97005; telephone # 1-866-570-5277,
which is responsible for servicing the loan.

RECORDING REQUESTED BY:
BAC Home Loans Servicing, LP
Attn: Home Retention Division
7105 Corporate Drive
(PTX-B-36)
Plano, TX 75024

Doc ID #: 00093028748 MOD

————————————SPACE ABOVE THIS LINE FOR RECORDER'S USE————————————

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 27th day of January, 2011, between AYDIN T ONER (the "Borrower[s]") and BAC Home Loans Servicing, LP (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 16th day of June, 2006 in the amount of 296,000.00 , and (2) the Note bearing the same date as, and secured by, the Security Instrument, and (3) any prior agreements or modifications in effect relative to the Note and Security Instrument which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 1212 PACIFIC TERRACE DRIVE, LAS VEGAS, NV 89126

The real property described being set forth as follows:

**"SAME AS IN SAID SECURITY INSTRUMENT"**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1.   As of the 1st day of February, 2011, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $250,111.62, consisting of the amount(s) loaned to the Borrower by the Lender which may include, but are not limited to, any past due principal payments, interest, fees and/or costs capitalized to date. All costs and expenses incurred by Lender in connection with this Modification, such as recording fees, title examination, property valuation fees, and notary fees shall not be paid by the Borrower. All costs and expenses incurred by Lender in connection with servicing this Mortgage such as attorney's fees shall be paid by the Borrower and shall be secured by this Security Instrument, unless stipulated otherwise by Lender.

2.   $43,504.28 of the "New Principal Balance" shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $206,607.34. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 2.000% from the 1st day of February, 2011. See below table for additional interest rate and payment effective dates per the modified loan terms. If on the 1st day of February, 2051 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3.   The payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|-------------------|----------------------------|
| 1-5 | 2.000% | February 1, 2011 | $625.66 | March 1, 2011 | 60 |
| 6 | 3.000% | February 1, 2016 | $726.87 | March 1, 2016 | 12 |
| 7 | 4.000% | February 1, 2017 | $833.71 | March 1, 2017 | 12 |
| 8 | 4.750% | February 1, 2018 | $916.77 | March 1, 2018 | Remaining Payments To Maturity Date |

3.   I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4.   If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5.   If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6.   Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument. BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security instrument and that contains any such terms and provisions as those referred to in (a) above.

7. The Borrower will make such payments at Payment Processing  PO Box 10219  Van Nuys, CA 91410 or at such other place as the Lender may require.

8. Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

9. In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

Dated: 2.08.2011

AYDIN TONER

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

95028748+USC+FNRA+5916c

303X 0009

DO NOT WRITE BELOW THIS LINE.

THIS SECTION IS FOR INTERNAL BANK OF AMERICA HOME LOANS SERVICING, LP USE ONLY

BAC Home Loans Servicing, LP
7105 Corporate Drive
(PTX-B-36)
Plano, TX 75024

By:                          Dated:

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

9302874B*USC+FKRA*59166c

# EXHIBIT "2"

# seterus.

**Physical Address**
14523 SW Millikan Way, Suite 200; Beaverton, OR 97005

**Business Hours (Pacific Time)**
Mon-Thu 5:00am to 9:00pm; Fri 5:00am to 6:00pm
Sat 6:00am to 12:00pm; Sun 9:00am to 5:00pm

**Payments**
PO Box 7162; Pasadena, CA 91109-7162

**Correspondence**
PO Box 4121; Beaverton, OR 97076-4121

**Phone**
866.570.5277

**Fax**
866.578.5277

**Website**
www.seterus.com

October 30, 2011

*LHSX*

ONER, AYDIN T
3733 MISTY FALLS ST
LAS VEGAS, NV 89129

## RE: REDACTED

Seterus, Inc. is the servicer of the above-referenced loan.

Your loan is in default, arising from the non-payment of the following amount:

Amount Due:     $3,201.56
Amount Due By:   December 4, 2011 ("Expiration Date")

We hereby demand that you cure this default by payment of the amount shown above. In addition, your regular payment may become due by the Expiration Date. The delinquent amount of principal continues to accrue interest.

If full payment of the default amount is not received by us in the form of a certified check, cashier's check, or money order on or before the Expiration Date, we will accelerate the maturity date of your loan and upon such acceleration the ENTIRE balance of the loan, including principal, accrued interest, and all other sums due thereunder, shall, at once and without further notice, become immediately due and payable.

Failure to cure the default will result in acceleration of the sums secured by the mortgage and may result in the sale of the premises. If you send only a partial payment, the loan still will be in default. Additionally, we will keep the payment and accelerate the maturity date.

IF THE DEFAULT IS NOT CURED ON OR BEFORE THE EXPIRATION DATE, THE LOAN OWNER AND WE INTEND TO ENFORCE THE LOAN OWNER'S RIGHTS AND REMEDIES AND MAY PROCEED WITHOUT FURTHER NOTICE TO COMMENCE FORECLOSURE PROCEEDINGS. ADDITIONAL FEES SUCH AS FORECLOSURE COSTS AND LEGAL FEES MAY BE ADDED PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

Nothing contained in this letter or in any other communication regarding the loan shall modify or waive any term or provision of the loan. The status of your loan may be reported to credit reporting agencies.

You have the right to reinstate your loan after acceleration and the right to bring a court action or assert in the foreclosure proceedings the nonexistence of a default or any other defense to acceleration and sale. If you reinstate your loan after acceleration, the loan no longer will be immediately due in full.

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO:** FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 302, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1331557, 1340663, 1340148. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

Case: 15-15506, 08/26/2015, ID: 9661584, DktEntry: 13, Page 52 of 102



ONER. AYDIN T
Page 2
October 30, 2011

If you receive or have received a discharge of this debt in a bankruptcy proceeding and the debt is not reaffirmed in the bankruptcy proceeding, you will not be personally responsible for the debt. However, the lien against the property securing this debt may remain on the property until the amount owing on the loan is paid. In addition, we may commence a foreclosure proceeding against the property that secures this loan.

This notice of our intent to foreclose has no effect on your right to dispute the debt in writing as indicated in the debt validation letter we sent to you on October 17, 2011. The Fair Debt Collection Practices Act does not require us to wait until the end of the 30-day validation period before attempting to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the 30-day period upon your receipt of the debt validation letter, the law requires us to suspend our efforts to collect the debt until we mail the requested information to you.

If you have any questions, please contact us at our toll-free number above.

Sincerely,

Seterus Inc.

Enclosures: SCRA Notice

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 302, Lakewood, CO 80228. The office's phone number is 888.738.5576. NEW YORK CITY: 1331537, 1540663, 1540148. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

# seterus.

## United States Department of Housing and Urban Development Servicemembers Civil Relief Act Notice

### Legal Rights and Protections Under the SCRA

- Servicemembers on "active duty" or "active service," or a dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 U.S.C App. 501 et seq.) (SCRA).

### Who May Be Entitled to Legal Protections Under the SCRA?

- Active duty members of the Army, Navy, Air Force, Marine Corps, Coast Guard, and active service National Guard;
- Active servicemembers of the commissioned corps of the National Oceanic and Atmospheric Administration;
- Active servicemembers of the commissioned corps of the Public Health Service;
- United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and
- Dependents of the above (e.g., spouse or children).

### What Legal Protections Are Servicemembers Entitled to Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or spouse jointly, prior to entering military service shall not bear interest at a rate above 6 percent during the period of military service and until one year after the end of such service. ;
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within 9 months after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within 9 months, after the servicemember's military service unless the creditor has obtained a court order approving the sale, foreclosure, or seizure of the real estate.

### How Does a Servicemember or Dependent Request Relief Under the SCRA?

- A servicemember or dependent, or both, may request relief under the SCRA by providing the lender/servicer a written notice with a copy of the servicemember's military orders.

Seterus, Inc.
PO Box #121
Beaverton, OR 97076-1121

### How Does a Servicemember or Dependent Obtain Information About the SCRA?

- The U.S. Department of Defense's information resource is "Military One Source." Web site: http://www.militaryonesource.com. The toll-free telephone numbers for Military One Source are: From the United States: 1-800-342-9647. From outside the United States (with applicable access code): 800-342-9647-7, International Collect: 1-484-530-5908.
- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for each branch of the armed forces is available at: http://legalassistance.law.af.mil/content/locator.php.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 302, Lakewood, CO 80228. The office's phone number is 888.738.5576; NEW YORK CITY: 1331557, 1340663, 1340148, TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance, Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR,

# EXHIBIT "C"



Inst #: 20140507-0003491
Fees: $20.00
N/C Fee: $0.00
05/07/2014 04:17:56 PM
Receipt #: 2017459
Requestor:
MCCARTHY & HOLTHUS LLP
Recorded By: ANI Pgs: 4
DEBBIE CONWAY
CLARK COUNTY RECORDER

## RECORDING COVER PAGE

Must be typed or printed clearly in black ink only.

APN# 138-27-211-021

11 digit Assessor's Parcel Number may be obtained at:
http://redrock.co.clark.nv.us/assrrealprop/ownr.aspx

## TITLE OF DOCUMENT (DO NOT Abbreviate)

NOTICE OF SHERIFF'S SALE OF REAL PROPERTY UNDER EXECUTION

Title of the Document on cover page must be EXACTLY as it appears on the first page of the document to be recorded.

Recording requested by:

FEDERAL NATIONAL MORTGAGE ASSOCIATION, (FNMA)

Return to:

Name McCarthy & Holthus, LLP

Address 9510 W. Sahara Ave., Suite 200

City/State/Zip Las Vegas, NV 89117

Electronically Filed
05/02/2014 03:57:08 PM

CLERK OF THE COURT

1   Kristin A. Schuler-Hintz, Esq., SBN 7171
    McCarthy & Holthus, LLP
2   9510 W. Sahara, Suite 200
    Las Vegas, NV 89117
3   Phone (702) 685-0329
    Fax (866) 339-5691
4   NVJUD@mccarthyholthus.com

5   Attorney for Plaintiff,

6   FEDERAL NATIONAL MORTGAGE ASSOCIATION,

7

8   **IN THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA**

9   **IN AND FOR THE COUNTY OF CLARK**

10  FEDERAL NATIONAL MORTGAGE              ) Case No. A-12-667674-C
11  ASSOCIATION,                           )
                                           ) Dept.:      XXX
12              Plaintiff,                 )
    v.                                     ) NOTICE OF SHERIFF'S SALE OF REAL
13                                         ) PROPERTY UNDER EXECUTION
    AYDIN T. ONER; COUNTRYWIDE             )
14  DOCUMENT CUSTODY SERVICES, A           )
    DIVISION OF TREASURY BANK, N.A.;       )
15  DOES I-X; and ROES 1-10 inclusive,     )
                                           )
16              Defendants.                )
17                                         )

18

19          By virtue of notice of entry of final Judgment filed June 3, 2013 and final Judgment

20  entered by the Eighth Judicial District Court in and for Clark County, Nevada in the above-

21  captioned case on May 21, 2013 and a Writ of Execution issued by the Clerk of the Eighth

22  Judicial District Court in and for Clark County, Nevada on April 16, 2014 in the above and

23  entitled action, the Sheriff of Clark County, Nevada will on Thursday, the 26th of June of

24  2014 at 10:15 a.m. located at the Front Steps of the North Entrance of the Regional Justice

25  Center, located at 200 Lewis Ave., Las Vegas, NV 89155, conduct a public auction for sale

26  to the highest bidder for cash, all the right, title, claim and interest of said Defendant Aydin

27  T. Oner, of, in and to the following described property to wit

28

NV-12-524916-JUD

1   OWNER OF RECORD: Aydin T. Oner

2   PHYSICAL PROPERTY ADDRESS: 1212 Pacific Terrace Drive, Las Vegas, NV 89128

3   LEGAL DESCRIPTION:

4       PARCEL ONE (1):  LOT FORTY-THREE (43) IN BLOCK ONE (1) OF
        RIDGEVIEW WEST - UNIT 3, AS SHOWN BY MAP THEREOF ON FILE
5       IN BOOK 48 OF PLATS, PAGE 53, IN THE OFFICE OF THE COUNTY
        RECORDER OF CLARK COUNTY, NEVADA.    PARCEL TWO (2):
6       TOGETHER WITH A CROSS-EASEMENT, IF ANY, FOR SIDEYARD
        PURPOSES OVER THAT PORTIO OF THE LOT ADJACENT WITH AND
7       CONTIGUOUS TO THE HEREIN DESCRIBED LOT, AS DELINEATED
        ON SAID PLAT MAP.
8
    APN #: 138-27-211-021
9
        This property is being sold subject to all prior liens and encumbrances pending
10
    against the property and subject to all easements, restrictions of record, taxes, and special
11
    assessments pending against the property. Only U.S. currency will be accepted and payment
12
    must be made in full immediately upon conclusion of the sale.
13
        NOTICE IS FURTHER GIVEN that the purchaser at such sale shall take title to the
14
    above described real property subject to a one (1) year right of redemption pursuant to NRS
15
    21.210.
16
        Only Cash or Certified Funds will be accepted and payment must be made in full
17
    immediately upon conclusion of the sale.
18

19

20

21

22

23

24
    ///
25
    ///
26
    ///
27

28

NV-12-524916-JUD

1      **PROSPECTIVE BIDDERS, READ THIS SECTION CAREFULLY.** Before

2  bidding at the sale, a prospective bidder should independently investigate the priority of the

3  lien or interest of the judgment creditor; land use laws and regulations applicable to the

4  property; approved uses for the property; limits on farming or forest practices on the

5  property; rights of neighboring property owners; environmental laws and regulations that

6  affect the property; make their own examination of the title and the condition of the property;

7  and to consult their own attorney before bidding.

8                                 DOUG GILLESPIE, SHERIFF

9                                 CLARK COUNTY, NEVADA

10

11                   By: _D. Flippo_ , PN 5734
                            Deputy       Date 5-1-14

12

13  Publication:      Nevada Legal News     Lt. G. Jason Flippo
    First Publication:                    Sheriff's Civil Section

14  Last Publication:

15

16  Respectfully submitted,

17  McCarthy & Holthus, LLP

18

19  _____

20  Janice Iacovino (NSB#11612)
    9510 West Sahara Avenue, Suite 200

21  Las Vegas, NV 89117
    Attorney for Plaintiff

22  (702) 685-0329

                                       CERTIFIED COPY

23                              DOCUMENT ATTACHED IS A
                            TRUE AND CORRECT COPY

24                              OF THE ORIGINAL ON FILE

25                              CLERK OF THE COURT
                            MAY 0 7 2015

26

27

28

                                        NV-12-524916-JUD

# EXHIBIT "D"

**BAPCPA, CRTCOMP, PRIORFILING, DISMISSED, CLOSED**

## U.S. Bankruptcy Court
## District of Nevada (Las Vegas)
## Bankruptcy Petition #: 14-14200-mkn

| | |
|---|---|
| | *Date filed:* 06/17/2014 |
| *Assigned to:* MIKE K. NAKAGAWA | *Date terminated:* 07/08/2015 |
| Chapter 13 | *Debtor dismissed:* 08/27/2014 |
| Voluntary | *341 meeting:* 09/09/2014 |
| Asset | |

*Debtor disposition:* Dismissed for Failure to File Information

| | |
|---|---|
| **Debtor** | represented by **AYDIN T ONER** |
| **AYDIN T ONER** | PRO SE |
| 3733 MISTY FALLS STREET | |
| LAS VEGAS, NV 89129 | |
| CLARK-NV | |
| SSN / ITIN: xxx-xx-2078 | |
| | |
| **Trustee** | represented by **RICK A. YARNALL** |
| **RICK A. YARNALL** | 701 BRIDGER AVE., #820 |
| 701 BRIDGER AVE., #820 | LAS VEGAS, NV 89101 |
| LAS VEGAS, NV 89101 | (702) 853-4500 |
| (702) 853-4500 | Email: ecfmail@LasVegas13.com |
| *TERMINATED: 07/24/2014* | |
| | |
| **Trustee** | represented by **KATHLEEN A. LEAVITT** |
| **KATHLEEN A. LEAVITT** | 201 LAS VEGAS BLVD., SO. #200 |
| 201 LAS VEGAS BLVD., SO. #200 | LAS VEGAS, NV 89101 |
| LAS VEGAS, NV 89101 | (702) 853-0700 |
| (702) 853-0700 | Email: courtsecf3@las13.com |

| Filing Date | # | Docket Text |
|---|---|---|
| 06/17/2014 | 1 (7 pgs) | Chapter 13 Voluntary Petition. Fee Amount $0.00. Request for fee to be paid in installments. Filed by AYDIN T ONER . (mrb) (Entered: 06/17/2014) |
| 06/17/2014 | 2 (3 pgs) | Meeting of Creditors and Notice of Appointment of Trustee RICK A. YARNALL, . 341 meeting to be held on 08/05/2014 at 08:00 AM at 341s - Foley |

| | | |
|---|---|---|
| | | Bldg,Rm 1500. Confirmation hearing to be held on 09/11/2014 at 01:30 PM at Foley Bldg,Third Floor. Objection to Dischargeability of Certain Debts due by 10/06/2014. Chapter 13 Proof of Claims due by 11/03/2014. (Entered: 06/17/2014) |
| 06/17/2014 | 3 | Statement of Social Security Number(s). **This document contains sensitive information and cannot be viewed by the public.** Filed by AYDIN T ONER (mrb) (Entered: 06/17/2014) |
| 06/17/2014 | 4 (1 pg) | Application to Pay Filing Fee in Installments Filed by AYDIN T ONER (mrb) (Entered: 06/17/2014) |
| 06/17/2014 | 5 | Receipt Number-1st Installment 217972, Fee Amount $80.00. (Related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor AYDIN T ONER) (mrb) (Entered: 06/17/2014) |
| 06/17/2014 | 6 | Hearing Scheduled/Rescheduled Confirmation hearing to be held on 9/11/2014 at 01:30 PM at Foley Bldg,Third Floor. (Related document(s)2 Meeting of Creditors Chapter 13 (BNC)) (mrb) (Entered: 06/17/2014) |
| 06/17/2014 | 7 | Set Deficient Filing Deadlines. Incomplete Filings due by 7/1/2014. Verification of Creditor Matrix due by 7/1/2014. Summary of schedules due by 7/1/2014. Schedule B due by 7/1/2014. Schedule C due by 7/1/2014. Schedule D due by 7/1/2014. Schedule E due by 7/1/2014. Schedule F due by 7/1/2014. Schedule G due by 7/1/2014. Schedule H due by 7/1/2014. Schedule I due by 7/1/2014. Schedule J due by 7/1/2014. Declaration Re: Schedules due by 7/1/2014. Statement of Financial Affairs due by 7/1/2014. Chapter 13 Plan due by 7/1/2014. Chapter 13 Means Test Form 22C Due 7/1/2014 (mrb) (Entered: 06/17/2014) |
| 06/17/2014 | 8 (7 pgs) | Notice of Incomplete and/or Deficient Filing. (mrb) (Entered: 06/17/2014) |
| 06/18/2014 | | Notice of Debtor's Prior Filing for debtor AYDIN T ONER Case Number 11-10825, Chapter 13 filed in Nevada Bankruptcy Court on 01/21/2011 , Dismissed for Failure to File Information on 03/23/2011; Case Number 13-17116, Chapter 13 filed in Nevada Bankruptcy Court on 08/20/2013 , Dismissed for |

| | | |
|---|---|---|
| | | Failure to File Information on 10/10/2013.(Admin) (Entered: 06/18/2014) |
| 06/19/2014 | 9 (4 pgs) | BNC Certificate of Mailing (Related document(s)2 Meeting of Creditors Chapter 13 (BNC)) No. of Notices: 8. Notice Date 06/19/2014. (Admin.) (Entered: 06/19/2014) |
| 06/19/2014 | 10 (8 pgs) | BNC Certificate of Mailing. (Related document(s)8 Incomplete and/or Deficient Filing-Ch 13 (BNC)) No. of Notices: 1. Notice Date 06/19/2014. (Admin.) (Entered: 06/19/2014) |
| 06/25/2014 | 11 (4 pgs; 2 docs) | Request for Special Notice Filed by SHERRY A. MOORE on behalf of U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE C-BASS MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-MH1, ITS ASSIGNEES AND/OR SUCCESSORS (Attachments: # 1 certificate of service) (MOORE, SHERRY) (Entered: 06/25/2014) |
| 07/02/2014 | 13 (2 pgs) | Certificate of Credit Counseling Filed by AYDIN T ONER (wml) (Entered: 07/03/2014) |
| 07/02/2014 | 14 (2 pgs) | Debtor's Certification of Completion of Instructional Course Concerning Personal Financial Management. Filed by AYDIN T ONER (wml) (Entered: 07/03/2014) |
| 07/03/2014 | 12 (3 pgs) | Notice of Mortgage Payment Change (No Proof of Claim Filed) with Certificate of Service Filed by Creditor BANK OF AMERICA, N.A. (BANK OF AMERICA (ct)) (Entered: 07/03/2014) |
| 07/07/2014 | 15 (1 pg) | Order Granting Application to Pay Filing Fees in Installments First Installment Payment due by 07/17/2014. Second Installment Payment due by 08/18/2014. Third Installment Payment due by 09/15/2014. Final Installment Payment due by 10/15/2014. (Related document(s)4 Application to Pay Filing Fees in Installments filed by Debtor AYDIN T ONER.) (ccc) (Entered: 07/07/2014) |
| 07/07/2014 | 16 (1 pg) | Order on Debtor's Certification of Exigent Circumstances (Related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor AYDIN T ONER.) (ccc) (Entered: 07/07/2014) |

| 07/07/2014 | 17 (4 pgs) | Request for Special Notice with Certificate of Service Filed by GREGORY L. WILDE on behalf of JPMORGAN CHASE BANK, N.A. (WILDE, GREGORY) (Entered: 07/07/2014) |
|---|---|---|
| 07/08/2014 | 18 | Receipt Number-2nd Installment 218219, Fee Amount $80.00., Receipt Number-3rd Installment 218219, Fee Amount $80.00. (Related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor AYDIN T ONER) (wml) Modified on 7/9/2014 to Reflect 2nd and 3rd Installment(Lakas, WM). (Entered: 07/08/2014) |
| 07/08/2014 | 19 (16 pgs) | Schedule[s] B, Personal Property Amount: $ 14535.00, E, Creditors Holding Unsecured Priority Claims Amount: $ 0.00, F, Creditors Holding Unsecured Nonpriority Claims Amount: $ 0.00, G, H, I, Average Income Amount: $ 4629.00, J, Current Expenditures Amount: $ 5805.00, Filed by AYDIN T ONER (ccc) (Entered: 07/09/2014) |
| 07/09/2014 | 20 (2 pgs) | BNC Certificate of Mailing - pdf (Related document (s)16 Order on Debtor's Certification of Exigent Circumstances) No. of Notices: 11. Notice Date 07/09/2014. (Admin.) (Entered: 07/09/2014) |
| 07/09/2014 | 21 (2 pgs) | BNC Certificate of Mailing - pdf (Related document (s)15 Application to Pay Filing Fee in Installments (BNC)) No. of Notices: 1. Notice Date 07/09/2014. (Admin.) (Entered: 07/09/2014) |
| 07/10/2014 | 22 (4 pgs) | Adversary case 14-01112. Complaint *FOR DECLARATORY AND INJUNCTIVE RELIEF* Filed by AYDIN T ONER vs. CITIMORTGAGE INC. AND NATIONAL DEFAULT SERVICING CORPORATION, FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SETERUS, INC., OCWEN LOAN SERVICING, INC. Fee Amount $350.00. (72 (Injunctive relief - other)(mrb) (Entered: 07/10/2014) |
| 07/22/2014 | 23 (2 pgs) | Appointment of Successor/Interim Trustee. Terminate Interim Trustee Due 07/23/2014. (80FARROW (md), SCOTT) (Entered: 07/22/2014) |
| 07/24/2014 | | |

|  |  | KATHLEEN A. LEAVITT added to case, Terminated Trustee RICK A. YARNALL (arv) (Entered: 07/24/2014) |
|---|---|---|
| 07/24/2014 | 24 (3 pgs) | Amended Meeting of Creditors. 341(a) meeting to be held on 9/9/2014 at 01:00 PM at 341s - Foley Bldg,Rm 1500. Confirmation hearing to be held on 10/16/2014 at 01:30 PM Foley Bldg,Third Floor Deadline to Object to Debtors Discharge or to Challenge Dischargeability of Certain Debts due: 10/6/2014. Proof of Claim due by 11/3/2014 (arv) (Entered: 07/24/2014) |
| 07/24/2014 | 25 | Hearing Scheduled/Rescheduled Confirmation hearing to be held on 10/16/2014 at 01:30 PM at Foley Bldg,Third Floor. (Related document(s)24 Amended Meeting of Creditors Chapter 13 (BNC)) (arv) (Entered: 07/24/2014) |
| 07/24/2014 | 26 (4 pgs) | Request for Special Notice with Certificate of Service Filed by GREGORY L. WILDE on behalf of CITIMORTGAGE, INC. (WILDE, GREGORY) (Entered: 07/24/2014) |
| 07/26/2014 | 27 (4 pgs) | BNC Certificate of Mailing (Related document(s)24 Amended Meeting of Creditors Chapter 13 (BNC)) No. of Notices: 15. Notice Date 07/26/2014. (Admin.) (Entered: 07/26/2014) |
| 08/02/2014 | 28 (3 pgs) | Notice of Mortgage Payment Change (No Proof of Claim Filed) with Certificate of Service Filed by Creditor BANK OF AMERICA, N.A. (BANK OF AMERICA (ct)) (Entered: 08/02/2014) |
| 08/05/2014 | 29 (2 pgs) | Ex Parte Motion to Dismiss Case for Failure to File Required Documents under Section 521(i) Filed by RAYMOND A. JEREZA on behalf of OCWEN LOAN SERVICING, LLC (JEREZA, RAYMOND) (Entered: 08/05/2014) |
| 08/05/2014 | 30 | 341 Meeting Off Calendar (YARNALL, RICK) (Entered: 08/05/2014) |
| 08/11/2014 | 31 | Receipt Number-Final Installment 218615, Fee Amount $70.00. (Related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor AYDIN T ONER, 15 Application to Pay Filing Fee in Installments (BNC)) (arv) (Entered: 08/11/2014) |

| 08/11/2014 | <u>32</u><br>(8 pgs) | Opposition with Certificate of Service Filed by AYDIN T ONER (Related document(s)<u>29</u> Motion to Dismiss Case under Section 521(i) filed by Creditor OCWEN LOAN SERVICING, LLC.) (ccc) (Entered: 08/12/2014) |
| 08/14/2014 | <u>33</u><br>(3 pgs) | Chapter 13 Standing Trustee's Final Report and Account. (YARNALL, RICK) (Entered: 08/14/2014) |
| 08/15/2014 | <u>34</u><br>(1 pg) | Certificate of Service Filed by RICK A. YARNALL on behalf of RICK A. YARNALL (Related document (s)<u>33</u> Chapter 13 Standing Trustee's Final Report and Account -Transferred) (YARNALL, RICK) (Entered: 08/15/2014) |
| 08/20/2014 | <u>35</u><br>(2 pgs) | Ex Parte Motion to Dismiss Case for Failure to File Required Documents under Section 521(i) Filed by KATHLEEN A. LEAVITT on behalf of KATHLEEN A. LEAVITT (LEAVITT, KATHLEEN) (Entered: 08/20/2014) |
| 08/20/2014 | <u>36</u><br>(11 pgs) | Statement of Financial Affairs Filed by AYDIN T ONER (Related document(s) 7 Set Deficient Filing Deadlines) (ccc) (Entered: 08/21/2014) |
| 08/22/2014 | <u>37</u><br>(6 pgs) | Opposition Filed by AYDIN T ONER (Related document(s)<u>35</u> Motion to Dismiss Case under Section 521(i) filed by Trustee KATHLEEN A. LEAVITT.) (ccc) (Entered: 08/25/2014) |
| 08/22/2014 | <u>38</u><br>(3 pgs; 2 docs) | Motion to Extend Time Filed by AYDIN T ONER (ccc) Additional attachment(s) added on 8/26/2014 (Foster, VA). (Entered: 08/25/2014) |
| 08/25/2014 | <u>39</u><br>(4 pgs) | Objection with Certificate of Service Filed by AYDIN T ONER (Related document(s)<u>33</u> Chapter 13 Standing Trustee's Final Report and Account -Transferred.) (ccc) (Entered: 08/26/2014) |
| 08/25/2014 | <u>40</u><br>(2 pgs) | Motion to Extend Time Filed by AYDIN T ONER (Realted document(s) <u>2</u> Meeting of Creditors and Notice of Appointment of Trustee)(ccc) (Entered: 08/26/2014) |
| 08/25/2014 | <u>44</u><br>(2 pgs) | (NONCONFORMING ENTRY) Plaintiff's Request To Enlarge Time For Hearing FRBP 9006(b)(1) Filed by AYDIN T ONER (mah) Modified on 9/9/2014 to |

|  |  |  |
|---|---|---|
|  |  | reflect docketed on incorrect case. See 14-1112 (Hess, MA). (Entered: 09/09/2014) |
| 08/27/2014 | 41 (2 pgs) | Order Granting Motion To Dismiss Case under Section 521(i) (Related Doc # 35) (ccc) (Entered: 08/27/2014) |
| 08/27/2014 | 42 (1 pg) | Notice of Dismissal; Notice That All Pending Hearings Are Vacated (ccc) (Entered: 08/27/2014) |
| 08/29/2014 | 43 (3 pgs) | BNC Certificate of Mailing. (Related document(s)42 Notice of Dismissal; Notice That All Pending Hearings Are Vacated (BNC-BK)) No. of Notices: 17. Notice Date 08/29/2014. (Admin.) (Entered: 08/29/2014) |
| 09/12/2014 | 45 | 341 Meeting Off Calendar (LEAVITT, KATHLEEN) (Entered: 09/12/2014) |
| 12/10/2014 | 46 (2 pgs) | Motion to Reopen Chapter 13 Case . Receipt Number 220138, Fee Amount $235. Filed by AYDIN T ONER (ccc) (Entered: 12/11/2014) |
| 12/10/2014 | 47 (2 pgs) | Notice Filed by AYDIN T ONER (Related document (s)46 Motion to Reopen Chapter 13 Case filed by Debtor AYDIN T ONER) (ccc) (Entered: 12/11/2014) |
| 12/11/2014 | 48 (3 pgs) | Chapter 13 Standing Trustee's Final Report and Account -Dismissed. Chapter 13 (Dismissed) Closing due 12/12/2014. (LEAVITT, KATHLEEN) (Entered: 12/11/2014) |
| 12/15/2014 | 49 (1 pg) | DENIED (Order Granting Motion To Reopen Bankruptcy Case) (Related document(s) 46) (ccc) (Entered: 12/15/2014) |
| 02/26/2015 | 50 (3 pgs) | Chapter 13 Standing Trustee's Final Report and Account -Dismissed. Chapter 13 (Dismissed) Closing due 02/27/2015. (LEAVITT, KATHLEEN) (Entered: 02/26/2015) |
| 03/19/2015 | 51 (1 pg) | Certificate of Service of Chapter 13 Standing Trustee's Final Report and Account. with Certificate of Service (LEAVITT, KATHLEEN) (Entered: 03/19/2015) |
| 04/21/2015 |  |  |

| | 52<br>(1 pg) | Certificate of Service of Chapter 13 Standing Trustee's Final Report and Account. with Certificate of Service (LEAVITT, KATHLEEN) (Entered: 04/21/2015) |
|---|---|---|
| 07/08/2015 | 53 | Disposition and Closing of Adversary Case (lms) (Entered: 07/08/2015) |
| 07/08/2015 | 54<br>(1 pg) | Order Discharging Chapter 13 Trustee and Closing of Dismissed Case (lms) (Entered: 07/08/2015) |

<table>
<tr><th colspan="5">PACER Service Center</th></tr>
<tr><th colspan="5">Transaction Receipt</th></tr>
<tr><td colspan="5">08/25/2015 15:40:59</td></tr>
<tr><td>PACER Login:</td><td>chenmw11:4640065:0</td><td>Client Code:</td><td colspan="2"></td></tr>
<tr><td>Description:</td><td>Docket Report</td><td>Search Criteria:</td><td colspan="2">14-14200-mkn Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included</td></tr>
<tr><td>Billable Pages:</td><td>4</td><td>Cost:</td><td colspan="2">0.40</td></tr>
</table>

# EXHIBIT "E"

DISMISSED, CLOSED

## U.S. Bankruptcy Court
### District of Nevada (Las Vegas)
### Adversary Proceeding #: 14-01112-mkn

*Assigned to:* MIKE K. NAKAGAWA
*Lead BK Case:* 14-14200
*Lead BK Title:* AYDIN T ONER
*Lead BK Chapter:* 13
*Demand:*

*Date Filed:* 07/10/14
*Date Terminated:* 07/08/15
*Date Dismissed:* 11/10/14

*Nature[s] of Suit:* 72 Injunctive relief - other

### *Plaintiff*
------------------------

**AYDIN T ONER**
3733 MISTY FALLS STREET
LAS VEGAS, NV 89129
SSN / ITIN: xxx-xx-2078

represented by **AYDIN T ONER**
PRO SE

V.

### *Defendant*
------------------------

**CITIMORTGAGE INC. AND NATIONAL
DEFAULT SERVICING CORPORATION**
C/O 3733 MISTY FALLS STREET
LAS VEGAS, NV 89129

represented by **GREGORY L. WILDE**
TIFFANY & BOSCO PA
212 S. JONES BLVD.
LAS VEGAS, NV 89107
(702) 258-8200
Fax : (702) 258-8787
Email: nvbk@tblaw.com

### *Defendant*
------------------------

**FEDERAL NATIONAL MORTGAGE
ASSOCIATION AND SETERUS, INC.**
C/O 3733 MISTY FALLS STREET
LAS VEGAS, NV 89129

represented by **MICHAEL W. CHEN**
MCCARTHY HOLTHUS, LLP
9510 W SAHARA AVE, STE 110
LAS VEGAS, NV 89117
(702) 685-0329
Fax : (866) 339-5691
Email: bknotice@mccarthyholthus.com

**Defendant**
--------------------

**OCWEN LOAN SERVICING, INC.**
C/O 3733 MISTY FALLS STREET
LAS VEGAS, NV 89129

represented by **RAYMOND A. JEREZA**
SMITH LARSEN & WIXOM
1935 Village Center Circle
LAS VEGAS, NV 89134
702-252-5002
Fax : 702-252-5006
Email: rj@slwlaw.com

| Filing Date | # | Docket Text |
|---|---|---|
| 07/10/2014 | 1<br>(4 pgs) | Adversary case 14-01112. Complaint *FOR DECLARATORY AND INJUNCTIVE RELIEF* Filed by AYDIN T ONER vs. CITIMORTGAGE INC. AND NATIONAL DEFAULT SERVICING CORPORATION, FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SETERUS, INC., OCWEN LOAN SERVICING, INC. Fee Amount $350.00. (72 (Injunctive relief - other) (mrb) (Entered: 07/10/2014) |
| 07/10/2014 | 2 | Scheduling Conference scheduled for 10/23/2014 at 10:00 AM at MKN-Courtroom 2, Foley Federal Bldg. (Related document(s)1 Complaint filed by Plaintiff AYDIN T ONER.) (mrb) (Entered: 07/10/2014) |
| 07/10/2014 | 3<br>(3 pgs) | Summons Issued on CITIMORTGAGE INC. AND NATIONAL DEFAULT SERVICING CORPORATION (mrb) (Entered: 07/10/2014) |
| 07/10/2014 | 4<br>(3 pgs) | Summons Issued on FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SETERUS, INC. (mrb) (Entered: 07/10/2014) |
| 07/10/2014 | 5<br>(3 pgs) | Summons Issued on OCWEN LOAN SERVICING, INC. (mrb) (Entered: 07/10/2014) |
| 07/10/2014 | 6 | Fee Waived $350.00 (Related document(s)1 Complaint filed by Plaintiff AYDIN T ONER) (kmm) (Entered: 07/10/2014) |
| 08/06/2014 | 7<br>(3 pgs) | Notice *(Request for Special Notice)* with Certificate of Service Filed by MICHAEL W. CHEN on behalf of FEDERAL NATIONAL MORTGAGE |

| | | |
|---|---|---|
| | | ASSOCIATION AND SETERUS, INC. (CHEN, MICHAEL) (Entered: 08/06/2014) |
| 08/08/2014 | 8 <br> (155 pgs; 5 docs) | Motion to Dismiss *Plaintiffs' Complaint Pursuant to Rule 12(b)(6)* with Certificate of Service Filed by MICHAEL W. CHEN on behalf of FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SETERUS, INC. (Attachments: # 1 Exhibit proof of service # 2 Exhibit exhibits # 3 Exhibit exhibits continued # 4 Exhibit exhibits continued) (CHEN, MICHAEL) (Entered: 08/08/2014) |
| 08/08/2014 | 9 <br> (2 pgs) | Notice of Hearing *on Motion to Dismiss Plaintiffs' Complaint Pursuant to Rule 12 (b)(6)* Hearing Date: 9/10/2014 Hearing Time: 9:30 am Filed by MICHAEL W. CHEN on behalf of FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SETERUS, INC. (Related document(s)8 Motion to Dismiss filed by Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SETERUS, INC..)(CHEN, MICHAEL) (Entered: 08/08/2014) |
| 08/11/2014 | 10 | Hearing Scheduled/Rescheduled. Hearing scheduled 9/10/2014 at 09:30 AM at MKN-Courtroom 2, Foley Federal Bldg. (Related document(s)8 Motion to Dismiss filed by Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SETERUS, INC..) (ccc) (Entered: 08/11/2014) |
| 08/25/2014 | 19 <br> (2 pgs) | Plaintiff's Request To Enlarge Time For Hearing - FRBP 9006(b)(1) Filed by AYDIN T ONER (mah) (Entered: 09/09/2014) |
| 08/29/2014 | 11 <br> (2 pgs) | Notice *of Appearance and Request for Notice* Filed by RAYMOND A. JEREZA on behalf of OCWEN LOAN SERVICING, INC. (JEREZA, RAYMOND) (Entered: 08/29/2014) |
| 09/02/2014 | 12 <br> (43 pgs) | Joinder *to Federal National Mortgage Association's Motion to Dismiss* Filed by RAYMOND A. JEREZA on behalf of OCWEN LOAN SERVICING, INC. (Related document(s)8 Motion to Dismiss filed by Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SETERUS, INC..) (JEREZA, RAYMOND) (Entered: 09/02/2014) |

| 09/02/2014 | 15 (5 pgs) | Opposition Filed by AYDIN T ONER (Related document(s)8 Motion to Dismiss filed by Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SETERUS, INC..) (ccc) (Entered: 09/04/2014) |
|---|---|---|
| 09/03/2014 | 13 (47 pgs) | Motion to Dismiss Adversary Proceeding *with Attached Exhibits A-C,* Filed by GREGORY L. WILDE on behalf of CITIMORTGAGE INC. AND NATIONAL DEFAULT SERVICING CORPORATION (WILDE, GREGORY) (Entered: 09/03/2014) |
| 09/03/2014 | 14 (5 pgs) | Notice of Hearing *of Motion to Dismiss,* Hearing Date: 10/08/2014 Hearing Time: 9:30AM with Certificate of Service Filed by GREGORY L. WILDE on behalf of CITIMORTGAGE INC. AND NATIONAL DEFAULT SERVICING CORPORATION (Related document(s)13 Motion to Dismiss Adversary Proceeding filed by Defendant CITIMORTGAGE INC. AND NATIONAL DEFAULT SERVICING CORPORATION) (WILDE, GREGORY) (Entered: 09/03/2014) |
| 09/04/2014 | 16 | Hearing Scheduled/Rescheduled. Hearing scheduled 10/8/2014 at 09:30 AM at MKN-Courtroom 2, Foley Federal Bldg. (Related document(s)13 Motion to Dismiss Adversary Proceeding filed by Defendant CITIMORTGAGE INC. AND NATIONAL DEFAULT SERVICING CORPORATION.) (ccc) (Entered: 09/04/2014) |
| 09/08/2014 | 17 (3 pgs) | Certificate of Service Filed by RAYMOND A. JEREZA on behalf of OCWEN LOAN SERVICING, INC. (Related document(s)11 Notice filed by Defendant OCWEN LOAN SERVICING, INC., 12 Joinder filed by Defendant OCWEN LOAN SERVICING, INC.) (JEREZA, RAYMOND) (Entered: 09/08/2014) |
| 09/09/2014 | 18 (4 pgs; 2 docs) | Reply *to Plaintiff's Opposition to Motion to Dismiss Plaintiffs' Complaint* with Certificate of Service Filed by MICHAEL W. CHEN on behalf of FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SETERUS, INC. (Related document(s)15 Opposition filed by Plaintiff AYDIN T ONER.) (Attachments: # 1 Certificate of |

| | | |
|---|---|---|
| | | Service) (CHEN, MICHAEL). Modified on 9/10/2014 to relate to #15 in place of #16 (Youngblood, CL). (Entered: 09/09/2014) |
| 09/22/2014 | 20 (2 pgs) | Certificate of Service *of proposed order* Filed by MICHAEL W. CHEN on behalf of FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SETERUS, INC. (Related document(s)8 Motion to Dismiss filed by Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SETERUS, INC..) (CHEN, MICHAEL) (Entered: 09/22/2014) |
| 09/23/2014 | 21 (4 pgs) | Order Granting Motion To Dismiss (Related document(s) 8) (ccc) (Entered: 09/23/2014) |
| 09/24/2014 | 22 (3 pgs) | Notice of Entry of Order/Judgment *dismissing Adversary complaint as to Federal National Mortgage Association, Seterus, Inc. and Ocwen Loan Servicing, LLC* Filed by MICHAEL W. CHEN on behalf of FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SETERUS, INC. (Related document(s)21 Order on Motion to Dismiss.)(CHEN, MICHAEL) (Entered: 09/24/2014) |
| 09/29/2014 | 23 (6 pgs) | Notice of Appeal. Filed by AYDIN T ONER . Receipt Number 219198, Fee Amount $298 (Related document(s)21 Order on Motion to Dismiss.)(mag) (Entered: 09/29/2014) |
| 09/29/2014 | 24 (1 pg) | Election to Appeal to District Court . Filed by AYDIN T ONER (Related document(s)23 Notice of Appeal filed by Plaintiff AYDIN T ONER.) (mag) (Entered: 09/29/2014) |
| 09/30/2014 | 25 | Appeal Reference Number 14-61 (Related document(s)23 Notice of Appeal filed by Plaintiff AYDIN T ONER.)(mag) (Entered: 09/30/2014) |
| 09/30/2014 | 26 (1 pg) | Notice of Referral of Appeal to USDC. Appeal Reference # 14-61 (Related document(s)23 Notice of Appeal filed by Plaintiff AYDIN T ONER.) (mag) (Entered: 09/30/2014) |
| 09/30/2014 | 27 (2 pgs) | Transmittal Form (USDC). Appeal Reference # 14-61 (Related document(s)23 Notice of Appeal filed |

| | | by Plaintiff AYDIN T ONER.)(mag) (Entered: 09/30/2014) |
|---|---|---|
| 09/30/2014 | <u>28</u><br>(2 pgs) | Appeal Memorandum (USDC). Appeal Reference # 14-61 (Related document(s)<u>23</u> Notice of Appeal filed by Plaintiff AYDIN T ONER.)(mag) (Entered: 09/30/2014) |
| 09/30/2014 | <u>29</u><br>(6 pgs) | Clerk Forwarded Appeal Documents to BNC for Noticing to: USDC (Related document(s)<u>23</u> Notice of Appeal filed by Plaintiff AYDIN T ONER.) (mag) (Entered: 09/30/2014) |
| 09/30/2014 | 30 | USDC Appeal Court Case #14-cv-01604-JCM, Appeal Reference #14-61. (Copy) MINUTE ORDER IN CHAMBERS of the Honorable Judge James C. Mahan, on 9/30/2014. IT IS ORDERED that the designation of reporters and recorders transcripts (if any) as required by LR 8006(b), shall be filed with the clerk of bankruptcy court so the certificate of record on appeal may be transmitted timely to the district court. If the designation was previously filed with the clerk of BAP, counsel shall file a copy of the same with the clerk of bankruptcy court. IT IS FURTHER ORDERED that all future documents filed in connection with this appeal shall bear the bankruptcy case number, adversary case number (if any) and the district court civil case number. For Bankruptcy Appeals, Attorneys are required to file Verified Petitions in accordance with LR IA 10-2. (no image attached) (Copies have been distributed pursuant to the NEF - SLR) (Related document(s)<u>23</u> Notice of Appeal filed by Plaintiff AYDIN T ONER.)(mrb) (Entered: 09/30/2014) |
| 10/02/2014 | <u>31</u><br>(3 pgs) | BNC Certificate of Mailing. (Related document(s) <u>28</u> Appeal Memorandum (USDC)) No. of Notices: 1. Notice Date 10/02/2014. (Admin.) (Entered: 10/02/2014) |
| 10/02/2014 | <u>32</u><br>(2 pgs) | BNC Certificate of Mailing. (Related document(s) <u>26</u> Notice of Referral of Appeal to USDC) No. of Notices: 1. Notice Date 10/02/2014. (Admin.) (Entered: 10/02/2014) |
| 10/02/2014 | <u>33</u><br>(3 pgs) | BNC Certificate of Mailing. (Related document(s) <u>27</u> Transmittal Form (USDC)) No. of Notices: 1. |

| | | Notice Date 10/02/2014. (Admin.) (Entered: 10/02/2014) |
|---|---|---|
| 10/02/2014 | [34](7 pgs) | BNC Certificate of Mailing - pdf (Related document(s)29 Appeal Documents Forwarded to BNC for Noticing) No. of Notices: 2. Notice Date 10/02/2014. (Admin.) (Entered: 10/02/2014) |
| 10/07/2014 | [35](2 pgs) | Opposition Filed by AYDIN T ONER (Related document(s)13 Motion to Dismiss Adversary Proceeding filed by Defendant CITIMORTGAGE INC. AND NATIONAL DEFAULT SERVICING CORPORATION.) (ccc) (Entered: 10/08/2014) |
| 10/08/2014 | 36 | **Minute Entry** Re: hearing on 10/8/2014 9:30 AM. Continued. (related document(s): 13 Motion to Dismiss Adversary Proceeding filed by CITIMORTGAGE INC. AND NATIONAL DEFAULT SERVICING CORPORATION) Appearance : AYDIN T ONER, MATT SCHRIEVER (Hearing scheduled 11/04/2014 at 09:30 AM at MKN-Courtroom 2, Foley Federal Bldg. (brr ) (Entered: 10/09/2014) |
| 10/14/2014 | [38](2 pgs) | Appellant Designation of Record and Appellant Statement of Issues Filed by AYDIN T ONER. Appeal Reference Number 14-61, USDC Case Number 14-cv-01604-JCM (Related document(s)23 Notice of Appeal filed by Plaintiff AYDIN T ONER.)(mrb) (Entered: 10/16/2014) |
| 10/15/2014 | [37](2 pgs) | Status Report Forwarded to: USDC. Appeal Reference #14-61, U.S. District Court #14-cv-01604-JCM (Related document(s)23 Notice of Appeal filed by Plaintiff AYDIN T ONER, 24 Election to Appeal filed by Plaintiff AYDIN T ONER.)(mrb) (Entered: 10/15/2014) |
| 10/16/2014 | [39](2 pgs) | Amended Status Report Forwarded to: USDC. Appeal Reference #14-61, U.S. District Court #14-cv-01604-JCM (Related document(s)23 Notice of Appeal filed by Plaintiff AYDIN T ONER, 37 Status Report.)(mrb) (Entered: 10/16/2014) |
| 10/17/2014 | [40](3 pgs) | BNC Certificate of Mailing. (Related document(s) 37 Status Report) No. of Notices: 2. Notice Date 10/17/2014. (Admin.) (Entered: 10/17/2014) |

| 10/18/2014 | 41 (3 pgs) | BNC Certificate of Mailing. (Related document(s) 39 Status Report) No. of Notices: 2. Notice Date 10/18/2014. (Admin.) (Entered: 10/18/2014) |
|---|---|---|
| 10/23/2014 | 42 | **Minute Entry** Re: hearing on 10/23/2014 10:00 AM. Continued. (related document(s): 1 Complaint filed by AYDIN T ONER). Appearance: MATT SCHRIEVER. Scheduling Conference scheduled for 11/04/2014 at 09:30 AM. (pal ) (Entered: 10/28/2014) |
| 11/04/2014 | 43 | **Minute Entry** Re: hearing on 11/4/2014 9:30 AM. Continued. (related document(s): 1 Complaint filed by AYDIN T ONER) Appearance : AYDIN T ONER, MATTHEW SCHRIEVER Scheduling Conference scheduled for 01/08/2015 at 10:00 AM. (dls ) Modified on 11/4/2014 to add appearance (Youngblood, CL). (Entered: 11/04/2014) |
| 11/10/2014 | 44 (7 pgs) | Order Granting Motion to Dismiss Adversary Proceeding (Related document(s) 13) (ccc) (Entered: 11/10/2014) |
| 11/13/2014 | 45 (7 pgs) | Clerk Forwarded Document to BNC for Noticing. (Related document(s)44 Order on Motion to Dismiss Adversary Proceeding.) (ccc) (Entered: 11/13/2014) |
| 11/15/2014 | 46 (8 pgs) | BNC Certificate of Mailing - pdf (Related document(s)45 Document Forwarded to BNC for Noticing) No. of Notices: 5. Notice Date 11/15/2014. (Admin.) (Entered: 11/15/2014) |
| 11/24/2014 | 47 (2 pgs) | Amended Notice of Appeal. Filed by AYDIN T ONER . Appeal Reference # 14-61 U.S. District Court # 14-cv-01604-JCM (Related document(s)23 Notice of Appeal filed by Plaintiff AYDIN T ONER.)(mag) (Entered: 11/25/2014) |
| 01/05/2015 | 48 (1 pg) | Certificate of Readiness Forwarded to: USDC. Appeal Reference # 14-61 U.S. District Court # 14-cv-01604-JCM (Related document(s)23 Notice of Appeal filed by Plaintiff AYDIN T ONER.)(mag) (Entered: 01/05/2015) |
| 01/07/2015 | 49 (2 pgs) | BNC Certificate of Mailing. (Related document(s) 48 Certificate of Readiness) No. of Notices: 2. |

| | | |
|---|---|---|
| | | Notice Date 01/07/2015. (Admin.) (Entered: 01/07/2015) |
| 01/07/2015 | 50 | (COPY) MINUTE ORDER IN CHAMBERS of the Honorable Judge James C. Mahan, on 1/7/2015. IT IS ORDERED appellant shall have period of fourteen (14) days from date of this order to file/serve opening brief. Appellee shall have fourteen (14) days after to file/serve answering brief. Thereafter, appellant shall have fourteen (14) days to file/serve final reply brief. IT IS FURTHER ORDERED that appellant shall file and serve with appellants brief excerpts of the record as an appendix pursuant to LR 8009(a) and Fed. R. Bank. P. 8009(b). Appellee may also file/serve an appendix with appellees brief which contains required material omitted by appellant. Opening brief due by 1/24/2015. Answering brief due by 2/10/2015. Reply brief due by 2/27/2015.(no image attached). Appeal Reference # 14-61 U.S. District Court # 14-cv-01604-JCM (Related document(s)23 Notice of Appeal filed by Plaintiff AYDIN T ONER.)(mag) (Entered: 01/08/2015) |
| 03/16/2015 | 51 (4 pgs) | (COPY) Order Dismissing Appeal. Appeal Reference # 14-61 U.S. District Court # 14-cv-01604-JCM (Related document(s)23 Notice of Appeal filed by Plaintiff AYDIN T ONER.)(mag) (Entered: 03/16/2015) |
| 04/17/2015 | 52 | USDC Case 14-cv-01604-JCM CLOSED. Appealed to Ninth Circuit - Appeal Court Case# 15-15506 Appeal Reference # 14-61 (Related document(s)23 Notice of Appeal filed by Plaintiff AYDIN T ONER.)(mag) (Entered: 04/17/2015) |
| 07/08/2015 | 53 | Disposition and Closing of Adversary Case (lms) (Entered: 07/08/2015) |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| 08/25/2015 15:02:36 |
| chenmw11:4640065:0 | |

| PACER Login: | | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 14-01112-mkn Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| Billable Pages: | 5 | Cost: | 0.50 |

# EXHIBIT "F"

**RECEIVED**
**AND FILED**

Aydin T. Oner, Debtor and Adversary Plaintiff *in proper person*
3733 Misty Falls Street
Las Vegas, NV 89129
Telephone: 702-353-4331

2014 JUL 10  PM 2 15

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re "AYDIN T ONER,"<br><br>Debtor. | Case No.: 14-14200-mkn<br><br>Chapter 13 |
| CITIMORTGAGE, INC., AND<br>NATIONAL DEFAULT SERVICING<br>CORPORATION; FEDERAL<br>NATIONAL MORTGAGE<br>ASSOCIATION AND SETERUS, INC.;<br>*and* OCWEN LOAN SERVICING, INC.,<br><br>Defendants | Adversary Proceeding No.<br><br><br><br>COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF |

In this matter of three certain real properties, I ALLEGE:

### 1. Plaintiffs and Jurisdiction

I am the owner of record of the real properties which are the subject matter of

this case. I commence this adversary complaint under this court's jurisdiction

pursuant to Title 11 U.S.C.A. Appendix, Rules 7001(2) and (9) to:

(1) determine the validity or extent of Defendants' claims against my real

properties, then

(2) clarify and remove any cloud from the titles. Further:

A. This court has prior-exclusive-and sole *in rem* jurisdiction over the subject

Page 1 - ADVERSARY COMPLAINT

properties commonly known as:

    (1) 3733 Misty Falls Street, Las Vegas, Nevada;

    (2) 1212 Pacific Terrace Dr., Las Vegas, Nevada; and

    (3) 5080 North Jerry Avenue, Pahrump, Nevada.

    B. Because the assigned trustee is the representative of the estate *per se* he is a co-Plaintiff as a matter of law.

## 2. Adversaries

    Defendants have aggressively made claims against my properties without proving those claims adequately under Nevada law. They are:

    A. Claiming status as a secured creditor on my Misty Falls property are CitiMortgage, Inc., and National Default Servicing Corporation.

    B. Claiming status as a secured creditor on my Pacific Terrace property are Federal National Mortgage Association and Seterus, Inc.; and

    C. Claiming status as a secured creditor on my Pahrump property is Ocwen Loan Servicing, Inc.

## 3. Rule 7008 statement

    As required by FRBP 7008(a), to the best of my knowledge and understanding this is a non-core proceeding pursuant to 28 U.S.C.A. § 157.

## 4. Judgment sought

    I am entitled to seek this court's declaratory judgment based on FRBP 7001

Page 2 - ADVERSARY COMPLAINT

"to determine the validity, priority, or extent of a lien or other interest in property,"
and to clarify these properties' titles:

A. Under the *actual and genuine* instruments material to this case,

B. Under applicable Nevada state property law, particularly conformance to
the *Edelstein* reunification requirements;

C. Declare who are the real parties in interest and who are strangers to the
Notes and Deeds of Trust, particularly conformance to the *Leyva* standards; and

D. If any Defendants are found to be strangers in the case, to remove their
clouds from my title(s).

## 5. Injunctive relief

The nature of declaratory proceedings provides I may also seek further
necessary or proper relief. I reserve the right to invoke FRBP 7065 for injunctive
relief to bar any Defendant from proceeding against my property during the
pendency of this case.

## 6. Recovering my costs and disbursements

I reserve the right to recover all costs and disbursements at the appropriate
stage of this case.

## 7. Request for relief

I pray this court declare my rights and other legal relations according to the
above, and all other relief as this court finds lawful, just and equitable.

Page 3 - ADVERSARY COMPLAINT

I expressly reserve the right to amend or supplement this Complaint as
needed. I also reserve my right to have this Complaint construed so as to do justice
according to applicable law.

*Submitted with all rights reserved on June 10, 2014*

Aydin T. Oner, Debtor and Adversary Plaintiff *in proper person*

Page 4 - ADVERSARY COMPLAINT

# EXHIBIT "G"

Honorable Mike K. Nakagawa
United States Bankruptcy Judge

**Entered on Docket**
**September 23, 2014**

Kristin A. Schuler-Hintz, Esq. SBN 7171
Michael Chen, Esq. SBN 7307                    E-filed: 9/22/2014
**McCarthy & Holthus, LLP**
9510 West Sahara Avenue, Suite 200
Las Vegas, NV 89117
Phone (877) 369-6122
Fax (866) 339-5691
NVBK@McCarthyHolthus.com

Attorneys for Defendants Federal National Mortgage Association, Inc. and Seterus, Inc.

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) Adv. No. 14-01112-mkn |
| | ) BK Case No.: 14-14200-mkn |
| Aydin T Oner, | ) |
| | ) Chapter 13 |
| Debtor. | ) |
| | ) DATE:  September 10, 2014 |
| Aydin T Oner, | ) TIME:   9:30AM |
| Plaintiff, | ) |
| v. | ) **ORDER DISMISSING ADVERSARY** |
| CitiMortgage, Inc., National Default Servicing | ) **COMPLAINT AS TO FEDERAL** |
| Corp., Federal National Mortgage Assoc., | ) **NATIONAL MORTGAGE** |
| Seterus, Inc., and Ocwen Loan Servicing, LLC | ) **ASSOCIATION, SETERUS, INC., AND** |
| Defendants. | ) **OCWEN LOAN SERVICING, LLC** |

*Rev. 12.09*

M&H File No NV-14-102079
14-14200-mkn

1       The Defendants', Federal National Mortgage Assoc., Inc. and Seterus, Inc., Motion to

2   Dismiss the Adversary Complaint, with Joinder filed by Ocwen Loan Servicing, LLC, servicer

3   for US Bank National Association, as Trustee for the C-BASS Mortgage Loan Asset Backed

4   Certificates, Series 2006-MH1, having come on regularly for hearing at the date and time set

5   forth above before the United States Bankruptcy Court, the Hon. Gary Allen Spraker presiding.

6   Upon review of the Motion and supporting evidence, and good cause appearing, the Court finds

7   as follows:

8       The Plaintiff failing to plead any plausible non-conclusory facts and/or legal theories in

9   support of any of the stated causes of action herein, and as against aforementioned Defendants,

10  thus failing to satisfy the standards of pleading under Federal Rules of Civil Procedure Rule 8

11  and 12(b)(6), and as enunciated in Ashcroft v. Iqbal, 556 U.S 662 (2009), accordingly;

12      IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Plaintiff's

13  Opposition to the Motion to Dismiss is denied.

14      IT IS FURTHER ORDERED that all counts of the Plaintiff's Complaint are dismissed

15  without prejudice as to Defendants Federal National Mortgage Association, Inc., Seterus, Inc.,

16  and Ocwen Loan Servicing, LLC, servicer for US Bank National Association, as Trustee for the

17  C-BASS Mortgage Loan Asset Backed Certificates, Series 2006-MH1.

18      IT IS FURTHER ORDERED that dismissal of the Complaint in its entirety as to the

19  aforementioned Defendants is done so without leave to amend said Complaint by the Plaintiff.

20

21  IT IS SO ORDERED.

22  Submitted by:
    McCarthy & Holthus, LLP

23

24  /s/Michael Chen _____
    Michael Chen, Esq.

25  9510 West Sahara Avenue, Suite 200
    Las Vegas, NV 89117

26  (877) 369-6122

27

28

29  / / /

1    <u>Approved</u>/Disapproved

2    */s/Christopher L. Benner 09/10/14*

3    Christopher L. Benner
     Attorney for Ocwen Loan Servicing, LLC, as servicer for
4    US Bank National Association, as Trustee for the C-BASS
5    Mortgage Loan Asset Backed Certificates, Series 2006-MH1

6
7    Approved/Disapproved

8    <u>Mailed by USPS 9/10/14-no response received</u>
     Aydin T. Oner
9    3733 Misty Falls Street
     Las Vegas, NV 89129
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

ALTERNATIVE METHOD re: RULE 9021:

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court has waived the requirement set forth in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

Counsel appearing: None

Counsel for Ocwen Loan Servicing, LLC. Christopher L. Benner – signed 09/10/14

Unrepresented parties appearing: None

Trustee: No Appearance at Hearing, No Additional Service Required

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

Submitted by:
McCarthy & Holthus, LLP

/s/ Michael Chen, Esq.
Michael Chen, Esq. SBN 7307

*Rev. 12.09*

M&H File No NV-14-102079
14-14200-mkn

<table>
<tr><td>1</td><td></td></tr>
<tr><td>2</td><td></td></tr>
</table>

Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
November 10, 2014

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

\* \* \* \* \* \*

| In re: | ) | Case No.: 14-14200-MKN |
|---|---|---|
| AYDIN T. ONER, | ) | Chapter 13 |
| Debtor. | ) | |
| AYDIN T. ONER, | ) | Adv. No. 14-01112-MKN |
| Plaintiff, | ) | |
| v. | ) | |
| CITIMORTGAGE, INC., AND NATIONAL | ) | Date: November 4, 2014 |
| DEFAULT SERVICING CORPORATION, et ) | | Time: 9:30 a.m. |
| al., | ) | |
| Defendants. | ) | |

## ORDER ON MOTION TO DISMISS[1]

On November 4, 2014, the court heard the Motion to Dismiss filed by Defendants,
CitiMortgage, Inc. and National Default Servicing Corporation. The appearances of counsel and

[1] In this Order, all references to "ECF No." are to the numbers assigned to the documents
filed in the above-captioned bankruptcy case as they appear on the docket maintained by the
clerk of the court. All references to "AECF No." are to the documents filed in the above-
captioned adversary proceeding. All references to "Section" are to the provisions of the
Bankruptcy Code, 11 U.S.C. §§ 101-1532. All references to "FRBP" are to the Federal Rules of
Bankruptcy Procedure. All references to "FRCP" are to the Federal Rules of Civil Procedure.

1

1 ‖ the parties were noted on the record. After oral arguments were presented, the matter was taken
2 ‖ under submission.

3 ‖ **BACKGROUND**

4 ‖ On June 17, 2014, Aydin T. Oner ("Debtor") filed a voluntary Chapter 13 petition. (ECF
5 ‖ No. 1). The case was assigned to bankruptcy trustee Rick Yarnall ("Chapter 13 Trustee"). (ECF
6 ‖ No. 2). The petition was not accompanied by schedules of assets and liabilities nor the other
7 ‖ information required by Section 521(a)(1). Under Section 521(i), Debtor had until August 1,
8 ‖ 2014, to file all of the information required by Section 521(a)(1), or his Chapter 13 proceeding
9 ‖ would be automatically dismissed effective August 2, 2014.

10 ‖ On July 8, 2014, Debtor filed numerous schedules of information required by Section
11 ‖ 521(a)(1), but not all of them. (ECF No. 19).

12 ‖ On July 10, 2014, Debtor commenced the above-captioned adversary proceeding by
13 ‖ filing an adversary complaint bearing the title "Complaint for Declaratory and Injunctive Relief"
14 ‖ ("Complaint"). (AECF No. 1). Defendants named in the Complaint are CitiMortgage, Inc.
15 ‖ ("Citi") and National Default Servicing Corporation ("NDSC") with respect to a property located
16 ‖ at 3733 Misty Falls Street, Las Vegas, Nevada ("Misty Falls Property"); Federal National
17 ‖ Mortgage Association ("FNMA") and Seterus, Inc. ("Seterus") with respect to a property located
18 ‖ at 1212 Pacific Terrace Drive, Las Vegas, Nevada; and Ocwen Loan Servicing, Inc. ("Ocwen")
19 ‖ with respect to a property located at 5080 North Jerry Avenue, Pahrump, Nevada. The
20 ‖ Complaint apparently seeks a declaratory judgment pursuant to FRBP 7001(9) to determine the
21 ‖ validity, priority or extent of any lien against the aforementioned properties pursuant to FRBP
22 ‖ 7001(2).

23 ‖ On August 5, 2014, a motion to dismiss the Debtor's Chapter 13 proceeding was filed by
24 ‖ Ocwen Loan Servicing, LLC, based on automatic dismissal requirement of Section 521(i). (ECF
25 ‖ No. 29).

26 ‖ On August 8, 2014, a motion to dismiss the Complaint was filed by FNMA and Seterus.

2

1   (AECF No. 8).

2       On August 11, 2014, Debtor filed opposition to Ocwen's motion to dismiss the

3   bankruptcy proceeding. (ECF No. 32).

4       On August 20, 2014, the Chapter 13 Trustee also filed a motion to dismiss the bankruptcy

5   proceeding under Section 521(i). (ECF No. 35).

6       On August 20, 2014, Debtor filed a statement of financial affairs. (ECF No. 36).

7       On August 22, 2014, Debtor filed opposition to the Chapter 13 Trustee's motion to

8   dismiss the bankruptcy proceeding. (ECF No. 37).

9       On August 27, 2014, an order was entered granting the Chapter 13 Trustee's motion to

10  dismiss pursuant to Section 521(i). (ECF No. 41).[2]

11      On September 2, 2014, Ocwen joined in the motion brought by FNMA and Seterus to

12  dismiss the Complaint. (AECF No. 12).

13      On September 2, 2014, Debtor filed an opposition to the FNMA and Seterus' motion to

14  dismiss. ("Debtor's FNMA Opposition") (AECF No. 15).[3]

15  ———————————————

16      [2] On January 21, 2011, Debtor commenced a prior Chapter 13 proceeding denominated
    Case No. 11-10825. On March 23, 2011, an order was entered dismissing the case under Section
17  521(i) because of the Debtor's failure to file the information required by Section 521(a)(1). On
    August 8, 2013, Debtor commenced another Chapter 13 proceeding denominated Case No. 13-
18  17116. On October 10, 2013, an order was entered dismissing the case under Section 521(i) due
    to the Debtor's failure to file the information required by Section 521(a)(1). Because the Debtor
19  filed the most recent bankruptcy proceeding within one year of the dismissal of his second case,
    the automatic stay under Section 362(a) was effective for only thirty days under Section
20  362(c)(3)(A). The record reflects that the Debtor did not seek to continue the automatic stay by
    filing a motion under Section 362(c)(3)(B), and therefore the automatic stay terminated as to the
21  Debtor as well as the bankruptcy estate. See Reswick v. Reswick (In re Reswick), 446 B.R. 362,
22  366-67 (B.A.P. 9th Cir. 2011).

23      [3] Debtor argued that the motion to dismiss brought by FNMA and Seterus was not
    properly before the court because the moving parties had not filed a corporate ownership
24  statement required by FRBP 7007.1. See Debtor's FNMA Opposition at 2. While Debtor is
    correct that none of the defendants in the adversary proceeding have filed the corporate
25  ownership statement required by FRBP 7007.1, he cited no authority indicating that such failure
26  precludes consideration of a pleading motion. Debtor also asserted a number of actions he

3

1    On September 3, 2014, Citi and NDSC filed a separate motion to dismiss the Complaint

2  ("Citi Dismissal Motion").  (AECF No. 13).

3    On September 9, 2014, FNMA and Seterus filed a reply to the Debtor's opposition.

4  (AECF No. 18).

5    On September 10, 2014, a hearing on the motion to dismiss brought by FNMA and

6  Seterus was held and the motion was granted.

7    On September 23, 2014, a written order was entered dismissing the Complaint as to

8  FNMA, Seterus and Ocwen ("FNMA Dismissal Order").  (AECF No. 21).

9    On September 29, 2014, Debtor appealed the FNMA Dismissal Order.  (AECF No. 23).

10    On October 7, 2014, Debtor filed opposition ("Opposition") to the Citi Dismissal Motion.

11  (AECF No. 35).[4]

12    On October 8, 2014, the hearing on the Citi Dismissal Motion was continued to

13  November 4, 2014.  (AECF No. 36).

14                          **DISCUSSION**

15    The Citi Dismissal Motion is brought pursuant to FRCP 12(b)(6), applicable in this

16  adversary proceeding pursuant to FRBP 7012.

17    "A dismissal under [FRCP] 12(b)(6) is essentially a ruling on a question of law."  N. Star

18  Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted). "The court

19  _____

20  intends to take, but none of them address the sufficiency of the allegations actually contained in
   the Complaint. Id. at 3-4.

21
   [4] Debtor's opposition to the Citi Dismissal Motion incorporates by reference the same
22  arguments contained in Debtor's FNMA Opposition. See note 3, supra. He also argues that this
   court's ruling on the Citi Dismissal Motion is subject to de novo review on appeal under 28
23  U.S.C. §157(c) because his Complaint involves a non-core matter. See Opposition at 2. Debtor
   ignores the language of 28 U.S.C. §157(b)(2)(K) which specifically lists "determinations of the
24  validity, extent, or priority of liens" among the core proceedings in which bankruptcy courts may
   issue a final order. In any event, a dismissal for failure to state a claim for relief is subject to de
25  novo review on appeal because it is based on the legal sufficiency of a complaint. See Barnes v.
26  Belice (In re Belice), 461 B.R. 564, 572 (B.A.P. 9th Cir. 2011).

                                    4

1  may dismiss a complaint as a matter of law for '(1) lack of a cognizable legal theory or (2)

2  insufficient facts under a cognizable legal claim.'" Smilecare Dental Grp. v. Delta Dental Plan

3  of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996), quoting Robertson v. Dean Witter Reynolds, Inc.,

4  749 F.2d 530, 534 (9th Cir. 1984).

5      "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

6  accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556

7  U.S. 662, 678 (2009)(quotations omitted), citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

8  (2007). In considering a dismissal motion, the court accepts as true all factual allegations made

9  by, and draws all reasonable inferences in favor of, the plaintiff. See Belice, 461 B.R. at 573.

10  Dismissal is appropriate if there is "a lack of a cognizable legal theory or the absence of

11  sufficient facts alleged under a cognizable legal theory." Id. (citation and quotations omitted).

12  The critical inquiry under either basis is whether the allegations in the complaint are well-pled.

13  While the complaint need not contain "detailed factual allegations, a plaintiff's obligation to

14  provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

15  formulaic recitation of the elements of a cause of action . . . ." Id., citing Twombly, 550 U.S. at

16  555 (quotations omitted). As such, a claim is facially plausible if there is factual content

17  sufficient for "the court to draw the reasonable inference that the defendant is liable for the

18  misconduct alleged . . . ." Id., citing Iqbal, 556 U.S. at 678.

19      The Complaint alleges that Citi and NDSC have "aggressively made claims" by

20  "claiming status as a secured creditor" with respect to the Misty Falls Property. See Complaint

21  at ¶ 2. The Complaint further alleges that the Debtor is entitled to a declaratory judgment to

22  determine the validity, priority, or extent of a lien, and:

23      to clarify these properties' titles:

24      A.   Under the *actual and genuine* instruments material to this case,
        B.   Under applicable Nevada state property law, particularly conformance to the
25           *Edelstein* reunification requirements;
        C.   Declare who are the real parties in interest and who are strangers to the Notes and
26           Deeds of Trust, particularly conformance to the *Leyva* standards; and

5

D.      If any Defendants are found to be strangers in the case, to remove their clouds from my title(s).

Complaint at ¶ 4 (italics in original). The Complaint further alleges that the Debtor may seek injunctive relief and to recover "all costs and disbursements." Id. at ¶¶ 5 and 6. The prayer of requests that "this court declare my rights and other legal relations according to the above." Id. at ¶ 7.

The allegations of the Complaint are legally insufficient to state a claim for relief. While the Debtor seeks a declaration of the validity, priority or extent of liens, he has alleged no facts identifying a factual or legal dispute concerning the secured claims allegedly made, and made "aggressively," by Citi and NDSC. He has not identified any "instruments material to this case" the genuineness of which is subject to question. He has not alleged any facts suggesting a failure by Citi or NDSC to comply with any applicable Nevada law. He has not alleged any facts implicating the factual and legal issues addressed by the Nevada Supreme Court in Edelstein v. Bank of New York Mellon, 286 P.3d 249 (Nev. 2012) or Leyva v. Nat'l Default Servicing Corp., 255 P.3d 1275 (Nev. 2011). He has not alleged any facts that would establish the existence of a cloud on the title to the Misty Falls Property attributable to the conduct of Citi or NDSC. In short, the Complaint has alleged the "labels and conclusions" found under FRBP 7001(2) and 7001(9), but it does not state a plausible basis for a claim for relief.

IT IS THEREFORE ORDERED that the Motion to Dismiss brought by defendants CitiMortgage, Inc. and National Default Service Corporation, Adversary Docket No. 13, be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's adversary proceeding is dismissed without prejudice as to defendants CitiMortgage, Inc. and National Default Service Corporation.

IT IS FURTHER ORDERED that the continued scheduling conference currently scheduled for January 8, 2015 at 10:00 a.m., is hereby VACATED.

6

1    Notice and Copies sent through:

2        CM/ECF ELECTRONIC NOTICING AND/OR
         BNC MAILING MATRIX

3

4    and sent via FIRST CLASS MAIL BY THE COURT AND/OR BNC to:

     AYDIN T ONER
5    3733 MISTY FALLS STREET
     LAS VEGAS, NV 89129

6

7
                                    # # #
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                     7

# EXHIBIT "H"

CLOSED,APPEAL

# United States District Court
## District of Nevada (Las Vegas)
### CIVIL DOCKET FOR CASE #: 2:14-cv-01604-JCM

Oner v. Federal National Mortgage Association et al
Assigned to: Judge James C. Mahan
Case in other court: U.S. Bankruptcy Court, 14-14200
                 Ninth Circuit, 15-15506
Cause: 28:1334 Bankruptcy Appeal

Date Filed: 09/30/2014
Date Terminated: 03/13/2015
Jury Demand: None
Nature of Suit: 422 Bankruptcy Appeal
(801)
Jurisdiction: Federal Question

**In Re**

**Aydin T. Oner**

represented by **Aydin T. Oner**
PRO SE

**Appellant**

**Aydin T. Oner**

represented by **Aydin T. Oner**
3733 Misty Falls Street
Las Vegas, NV 89129
702-353-4331
PRO SE

V.

**Appellee**

**Federal National Mortgage
Association**

represented by **Kristin A Schuler-Hintz**
McCarthy & Holthus, LLP
9510 West Sahara Avenue
Suite 110
Las Vegas, NV 89117
702-685-0329
Fax: 866-339-5691
Email: FDCNV@mccarthyholthus.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael W. Chen**
McCarthy Holthus LLP
9510 W Sahara Ave Ste 110
Las Vegas, NV 89117
(702) 685-0329
Fax: (866) 339-569
Email: mchen@mccarthyholthus.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Gregory L Wilde**
Tiffany & Bosco P.A.
212 South Jones Blvd.
Las Vegas, NV 89107
(702) 258-8200
Fax: (702) 258-8787
Email: efilenv@tblaw.com
*ATTORNEY TO BE NOTICED*

**Appellee**

**Seterus, Inc.**                    represented by **Kristin A Schuler-Hintz**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **Michael W. Chen**
                                     (See above for address)
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Appellee**

**Ocwen Loan Servicing, Inc.**       represented by **Christopher L. Benner**
                                     Smith Larsen Wixom LLP
                                     1935 Village Center Circle
                                     Las Vegas, NV 89134
                                     (702) 252-5002
                                     Fax: (702) 252-5006
                                     Email: clb@slwlaw.com
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

                                     **Raymond Jereza**
                                     Wright, Finlay & Zak
                                     7785 W. Sahara Ave., Suite 200
                                     Las Vegas, NV 89117
                                     702-475-7964
                                     Fax: 702-946-1345
                                     Email: rj@slwlaw.com
                                     *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Appellee**

**CitiMortgage, Inc.**               represented by **Gregory L Wilde**
                                     (See above for address)
                                     *ATTORNEY TO BE NOTICED*

**Appellee**

National Default Servicing        represented by   **Gregory L Wilde**
Corporation                                        (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

**Trustee**

**US Trustee**                    represented by   **U.S. Trustee, Las Vegas**
                                                   300 Las Vegas Boulevard South
                                                   Suite 4300
                                                   Las Vegas, NV 89101-5803
                                                   702-388-6600
                                                   Fax: 702-388-6658
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/30/2014 | | Case assigned to Judge James C. Mahan. (SLR) (Entered: 09/30/2014) |
| 09/30/2014 | 1 | Notice of APPEAL FROM BANKRUPTCY COURT, Bankruptcy Court case number 14-14200. Certificate of Interested Parties due by 10/10/2014. (Attachments: # 1 Transmittal, # 2 Memorandum, # 3 Notice of Referral)(SLR) (Entered: 09/30/2014) |
| 09/30/2014 | 2 | MINUTE ORDER IN CHAMBERS of the Honorable Judge James C. Mahan, on 9/30/2014. IT IS ORDERED that the designation of reporters and recorders transcripts (if any) as required by LR 8006(b), shall be filed with the clerk of bankruptcy court so the certificate of record on appeal may be transmitted timely to the district court. If the designation was previously filed with the clerk of BAP, counsel shall file a copy of the same with the clerk of bankruptcy court. IT IS FURTHER ORDERED that all future documents filed in connection with this appeal shall bear the bankruptcy case number, adversary case number (if any) and the district court civil case number. For Bankruptcy Appeals, Attorneys are required to file Verified Petitions in accordance with LR IA 10-2. **(no image attached)** (Copies have been distributed pursuant to the NEF - SLR) (Entered: 09/30/2014) |
| 10/10/2014 | 3 | CERTIFICATE of Interested Parties filed by Ocwen Loan Servicing, Inc.. There are no known interested parties other than those participating in the case . (Jereza, Raymond) (Entered: 10/10/2014) |
| 10/15/2014 | 4 | STATUS REPORT filed by United States Bankruptcy Court. (SLR) (Entered: 10/16/2014) |
| 10/16/2014 | 5 | AMENDED STATUS REPORT filed by U.S. Bankruptcy Court. (SLR) (Entered: 10/16/2014) |
| 10/24/2014 | 6 | CERTIFICATE of Interested Parties filed by Federal National Mortgage Association, Seterus, Inc.. There are no known interested parties other than those participating in the case. (Schuler-Hintz, Kristin) (Entered: 10/24/2014) |
| 12/03/2014 | 7 | |

| | | MOTION for Temporary Restraining Order by Appellant Aydin T. Oner. Motion ripe 12/3/2014. (SLD) (Entered: 12/03/2014) |
|---|---|---|
| 12/05/2014 | 8 | RESPONSE to 7 MOTION for Temporary Restraining Order, filed by Appellees Federal National Mortgage Association, Seterus, Inc.. Replies due by 12/15/2014. (Attachments: # 1 Exhibit Appellee's Motion to Dismiss, # 2 Exhibit Notice of Posting, # 3 Exhibit Complaint)(Schuler-Hintz, Kristin) (Entered: 12/05/2014) |
| 12/05/2014 | 9 | ORDER denying without prejudice 7 Motion for temporary restraining order. Signed by Judge James C. Mahan on 12/5/2014. (Copies have been distributed pursuant to the NEF - DKJ) (Entered: 12/05/2014) |
| 12/08/2014 | 10 | CERTIFICATE of Interested Parties filed by CitiMortgage, Inc., National Default Servicing Corporation that identifies all parties that have an interest in the outcome of this case. Corporate Parent CITIMORTGAGE, Corporate Parent National Default Servicing Corporation for CitiMortgage, Inc., National Default Servicing Corporation added. . (Wilde, Gregory) (Entered: 12/08/2014) |
| 12/08/2014 | 11 | CERTIFICATE OF SERVICE for 10 Certificate of Interested Parties, by Appellees Federal National Mortgage Association, National Default Servicing Corporation. (Wilde, Gregory) (Entered: 12/08/2014) |
| 12/30/2014 | 12 | MOTION for Preliminary Injunction by Appellant Aydin T. Oner. Responses due by 1/16/2015. (DKJ) (Entered: 12/30/2014) |
| 01/05/2015 | 13 | RESPONSE to 12 MOTION for Preliminary Injunction, filed by Appellees Federal National Mortgage Association, Seterus, Inc.. Replies due by 1/15/2015. (Schuler-Hintz, Kristin) (Entered: 01/05/2015) |
| 01/05/2015 | 14 | CERTIFICATE of Bankruptcy Record on Appeal. (SLR) (Entered: 01/07/2015) |
| 01/07/2015 | 15 | MINUTE ORDER IN CHAMBERS of the Honorable Judge James C. Mahan, on 1/7/2015. IT IS ORDERED appellant shall have period of fourteen (14) days from date of this order to file/serve opening brief. Appellee shall have fourteen (14) days after to file/serve answering brief. Thereafter, appellant shall have fourteen (14) days to file/serve final reply brief. IT IS FURTHER ORDERED that appellant shall file and serve with appellants brief excerpts of the record as an appendix pursuant to LR 8009(a) and Fed. R. Bank. P. 8009(b). Appellee may also file/serve an appendix with appellees brief which contains required material omitted by appellant. Opening brief due by 1/24/2015. Answering brief due by 2/10/2015. Reply brief due by 2/27/2015.(no image attached) (Copies have been distributed pursuant to the NEF - SLR) (Entered: 01/07/2015) |
| 01/13/2015 | 16 | REPLY to Response to 12 MOTION for Preliminary Injunction filed by Appellant Aydin T. Oner. (SLD) (Entered: 01/13/2015) |
| 01/15/2015 | 17 | ORDER Denying without prejudice 12 Motion for Preliminary Injunction. Signed by Judge James C. Mahan on 1/14/2015. (Copies have been distributed pursuant to the NEF - SLR) (Entered: 01/15/2015) |
| 01/20/2015 | 18 | MOTION to Extend Time (First Request) to File Brief re 15 BK Scheduling Minute Order by Appellant Aydin T. Oner. (SLD) (Entered: 01/21/2015) |

| 01/28/2015 | 19 | ORDER Granting Appellant's 18 Motion to Extend Time. Opening brief due by 2/9/2015. Signed by Judge James C. Mahan on 1/28/2015. (Copies have been distributed pursuant to the NEF - SLD) (Entered: 01/28/2015) |
| 02/10/2015 | 20 | MOTION to Hold Appeal in Abeyance by Appellant Aydin T. Oner. Responses due by 2/27/2015. (SLD) (Entered: 02/10/2015) |
| 02/18/2015 | 21 | RESPONSE to 20 MOTION to Hold Appeal in Abeyance, filed by Appellees Federal National Mortgage Association, Seterus, Inc.. Replies due by 2/28/2015. (Attachments: # 1 Exhibit Sheriffs Certificate of Sale of Real Property)(Schuler-Hintz, Kristin) (Entered: 02/18/2015) |
| 02/18/2015 | 22 | AMENDED RESPONSE to 20 MOTION to Hold Appeal in Abeyance, filed by Appellees Federal National Mortgage Association, Seterus, Inc.. Replies due by 2/28/2015. (Attachments: # 1 Exhibit Sheriff's Certificate of Sale of Real Property)(Schuler-Hintz, Kristin) (Entered: 02/18/2015) |
| 02/20/2015 | 23 | JOINDER to 22 Response to Motion; filed by Appellees CitiMortgage, Inc., National Default Servicing Corporation. (Wilde, Gregory) (Entered: 02/20/2015) |
| 03/02/2015 | 24 | REPLY BRIEF to 20 MOTION to Hold Appeal in Abeyance by Appellant Aydin T. Oner. (SLD) (Entered: 03/02/2015) |
| 03/03/2015 | 25 | ORDER Denying Appellant's 20 Motion to Hold Appeal in Abeyance. Appellant shall file his opening brief by 3/6/2015. The court cautions appellant that if he fails to file his opening brief by this deadline the court may impose sanctions, including dismissal of Appellant's appeal. Signed by Judge James C. Mahan on 3/3/2015. (Copies have been distributed pursuant to the NEF - SLD) (Entered: 03/03/2015) |
| 03/13/2015 | 26 | ORDER that appellant Aydin T. Oner's 1 appeal is Dismissed. The clerk's office is instructed to close the case and enter judgment in favor of defendants. Signed by Judge James C. Mahan on 3/12/2015. (Copies have been distributed pursuant to the NEF - SLD) (Entered: 03/13/2015) |
| 03/13/2015 | 27 | CLERK'S JUDGMENT in favor of Defendants/Appellees Federal National Mortgage Association, Seterus, Inc., Ocwen Loan Servicing, Inc., CitiMortgage, Inc., and National Default Servicing Corporation and against Plaintiff/Appellant Aydin T. Oner. Signed by Clerk of Court, Lance S. Wilson on 3/13/2015. (Copies have been distributed pursuant to the NEF - SLD) (Entered: 03/13/2015) |
| 03/16/2015 | 28 | NOTICE OF APPEAL as to 26 Order and 27 Clerk's Judgment by Appellant Aydin T. Oner. *(Filing fee $505 NOT PAID)*. E-mail notice (NEF) sent to the US Court of Appeals, Ninth Circuit. (SLD) (Entered: 03/17/2015) |
| 03/18/2015 | 29 | ORDER for Time Schedule as to 28 Notice of Appeal filed by Aydin T. Oner. **USCA Case Number 15-15506.** (MMM) (Entered: 03/18/2015) |
| 03/18/2015 | 30 | ORDER of USCA, Ninth Circuit, as to 28 Notice of Appeal filed by Aydin T. Oner. Within 21 days from the date of this order, appellant shall: (1) file a motion with this court to proceed in forma pauperis; (2) pay the docketing and filing fees for this appeal to the District Court; or (3) otherwise show cause why |

| | | the appeal should not be dismissed for failure to prosecute. (MMM) (Entered: 03/20/2015) |
|---|---|---|
| 03/30/2015 | 31 | USCA Appeal Fees received $505 receipt number NVLAS03339 re 28 Notice of Appeal filed by Aydin T. Oner. E-mail notice (NEF) sent to the US Court of Appeals, Ninth Circuit. (SLD) (Entered: 03/31/2015) |
| 06/22/2015 | 32 | MOTION to Extend Time to File Opening Brief by Aydin T. Oner. (cc: USCA - SLD) (Entered: 06/24/2015) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/25/2015 14:25:33 | | | |
| **PACER Login:** | chenmw11:4640065:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:14-cv-01604-JCM |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |